## James H. Eckels et al. v. Michael J. Boylan.

### Gen. No. 13,405.

1. PASSENGER AND CARRIER—*when latter liable to former for injuries resulting from collision.* Held, under the evidence, that the carrier was liable to the passenger for injuries resulting by reason of the car of the carrier being run so close to a wagon alongside the track of the car as to result in an injury by reason of the resulting collision.

2. VERDICT—*when not excessive.* A verdict for $6,000 rendered in an action for personal injuries is not excessive where it appears that the injury was a permanent one, which gave continual pain, which lessened the efficiency of the plaintiff for work and led to his losing employment after he secured it, and was such as would grow worse rather than better as he increased in age.

3. EVIDENCE—*when X-ray photograph competent.* An X-ray photograph, properly verified, showing the injury complained of, is competent.

Action in case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. GEORGE W. PATTON, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed October 3, 1907.

**Statement by the Court.** This is an appeal from a judgment of the Superior Court of Cook county in favor of Michael Boylan, the appellee, who was plaintiff below, and against the appellants as receivers of the Chicago Union Traction Company. The judgment is for $6,000, to be paid in due course of administration as such receivers. It was

entered upon the verdict of a jury in an action on the case for personal injuries.

The suit was by the plaintiff, Boylan, against the appellants and also the Pioneer Coal and Teaming Company. The declaration, which was filed July 21, 1904, contained but one count.   It alleged that on June 17, 1903, the plaintiff was a passenger on a street car in a train which the appellants were operating and running northward on South Halsted street, and that "when said train reached the vicinity of Taylor street the defendant Pioneer Coal and Teaming Company   *   *   *   had one of said company's coal wagons and a team attached to the same standing on said highway immediately alongside of said street railway upon which said train of street cars was approaching   *   *   *   and so close to said street railway that there was insufficient room for said train to pass it in safety, but that   *   *   *   said receivers' servants so in charge of said street railway train then and there negligently undertook and attempted to run said train past said wagon, and the plaintiff alleges that in so undertaking and attempting to run said train past said wagon and while running said train past said wagon, they so carelessly, negligently and improperly ran, managed and operated said train and the Pioneer Coal and Teaming Company's said servant so in charge of said coal wagon and team, and while acting as its servant, in permitting said team to be and remain in its said position and in attempting to remove the same from said position so negligently, carelessly and improperly managed, operated and controlled said team and wagon, that as a direct result and in consequence of the said negligence upon the part of the said servants of the said Receivers and the said servant of the said Pioneer Coal and Teaming Company, said street car   *   *   *   while the plaintiff was exercising ordinary care and caution for his own safety, was brought into violent collision with said wagon, and certain   *   *   *   portions of the said car were   *   *   *   displaced and broken, and as a direct result and as a consequence of said collision the bones of the

plaintiff's right leg  *  *  *  was broken  *  *  *  and his left leg was also  *  *  *  broken," etc.

The receivers filed a plea of the general issue to this declaration on August 2, 1904, and the Pioneer Coal and Teaming Company, September 13, 1904.

The trial began on April 5, 1906, and a verdict was rendered on April 10th. The verdict found the defendant, the Pioneer Coal and Teaming Company, not guilty, and found the appellants, as receivers of the Chicago Union Traction Company, guilty, and assessed the plaintiff's damages against them at $6,000. A motion for a new trial and a motion in arrest of judgment were afterward overruled by the court and judgment given on the verdict. This appeal followed.

In this court it is claimed, under suitable assignments of error, that the verdict is against the weight of the evidence; that no negligence was shown on the part of the appellants or their servants; that if there was, it was not the negligence charged in the declaration and does not support the verdict; that the damages assessed are excessive; that there was error in the admission of incompetent evidence, and that erroneous instructions were given to the jury injuriously affecting the appellants.

JOHN A. ROSE and ALBERT M. CROSS, for appellants; W. W. GURLEY, of counsel.

JAMES C. McSHANE, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

Under the showing of those facts alone in this case which are undisputed, it seems to us to require a great refinement of reasoning to argue that there was no negligence on the part of the train crew having in charge the car on which the appellee was riding.

The plaintiff was guilty of no contributory negligence, but was quietly sitting in the car of appellants in which he had taken a passage for which he had paid. The appellants owed him the very highest care consistent with the practica-

ble operation of their road.    So much is conceded by the appellants, in claiming that which is not denied, that they were not insurers of their passengers against accident, and that in a collision with the vehicle of a third party, the doctrine of presumptive negligence does not apply.

Starting, then, with this requirement of the highest possible care from the appellants consistent with the practicable operation of their road, and noting that we have nothing in this appeal to do with the question whether negligence can be imputed to the teaming company, but are concerned only with the alleged negligence of the appellants' servants, we are presented by evidence which is undisputed to this condition of things.

In the ordinary course of its running, the street car in question, coming to the north on the eastern track in Halsted street near Taylor, found a coal wagon backed up to the curb discharging coal to the east sidewalk on Halsted street. The wagon was a large and heavy turntable wagon.    The wagon box was twelve feet long, the distance from the curb to the east rail was but eleven feet four inches, and a corner at least of the wagon projected over the street car track. The horses were turned toward the south parallel with the tracks.    The train, which consisted of a grip car and two trailers, came to a stop as near at least as twenty feet to the wagon.    A wordy altercation ensued between the driver of the wagon and the train crew.    The driver finally got upon his seat, gathered up the reins, swung his wagon southward, and at about the same time the train started northward. The grip passed the wagon, but the wagon and the first trailer collided.    Several side posts and seats of the car were broken, and by the crush the plaintiff in his seat was very seriously injured.    To say that a jury, under these circumstances, had nothing before them which proved negligence on the part of the car operators, because the wagon was six feet and ten inches wide and the overhang of the car one foot and six inches, so that the two in close contact would occupy but eight feet and four inches of the eleven feet and four inches from the curb to the track, and that the grip car, which was as

wide as the trailer, passed the wagon without injury, is, in our opinion, as before indicated, refining too much about a very plain proposition.

It was not the highest care consistent with the practicable operation of the road which was given to the plaintiff. Whoever was responsible for the starting of the train was negligent in attempting to run too close to the wagon instead of waiting until the turning and progress of the heavy, necessarily swaying and swinging wagon, had removed the danger of the collision which occurred. The practicable operation of the road does not mean such dangerous promptness in moving on in such cases as was displayed here.

It is quite a different case from that cited by appellants— Loehner v. North Chicago Street R. R. Co., 116 Ill. App., 365, where the wagon and team were traveling on parallel tracks and a sudden turning out of the wagon from its course threw its rear end against the car.

It is much more like the case of Consolidated Traction Co. v. Schritter, 222 Ill., 364, in which it was contended by the defendants that a wagon had pulled out of the track a sufficient distance to permit the car to pass, and was then backed suddenly into the car. The court said, in language nearly applicable to the case at bar: "It is clear that if the wagon was far enough from the track to allow the car to pass, it was by a narrow margin. It was the duty of the motorman to keep a careful watch ahead for obstructions that were in, *and were liable to get in,* his way. He testified he was behind time and was hugging the wagon closely, putting on and taking off the power, and that when the wagon got clear of the track he turned on the power. The Appellate Court properly said on the subject, 'It was also a question for the jury, *even if it be conceded that the wagon did halt or swerve or even back a few inches more or less,* whether it was or was not negligence for the motorman not to guard against such contingencies until the wagon was at least far enough from the track to make it improbable, at least, that such halting or backing would endanger the passengers on the car.' "

Eckels v. Boylan.

In the case at bar, while we think the jury might properly have found negligence on the part of the train operators under the testimony which is not disputed, they had before them also evidence which they had the right to deem preponderating that the distance from the wagon at which the car stopped was less than twenty feet, that the wagon was almost due east and went across the track, that there was no sudden motion or backing of the wagon or stopping, slacking or zigzagging after the driver had started to turn and move south, and that the train started not only nearly but quite as soon as the wagon—all of which, if believed, would tend to make more apparent the fact that whether or not the driver of the wagon was negligent, the servants of the appellant in relation to their passengers certainly were.    While it is true, as is stated in W. C. St. R. R. Co. v. Callow, 102 Ill. App., 323, that "street car employees are not obliged to be on guard at all times against the unreasonable conduct of persons on the street," this is not to say that they may, with reference to their passengers, *assume* that all other persons on the street will at all times act in the most prudent, careful and considerate manner.

It is, however, claimed by appellants that even if the jury were justified in believing that it was negligence to attempt to propel the train past the wagon before the wagon had gotten far enough from the track to make it improbable that it would come into contact with any portion of the train, such negligence would not be that specific negligence charged in the declaration and therefore would not warrant a verdict of guilty.    This again is too great a refinement as to the meaning of words.

The allegation of the declaration, so far as the appellants are concerned, is that the "receivers' servants so in charge of said street railway train then and there negligently undertook and attempted to run said train past said wagon, and the plaintiff alleges that in so undertaking and attempting to run said train past said wagon, and while running said train past said wagon, they so carelessly, negligently and improperly run, managed, and operated said train    *    *    *    that

as a direct result and in consequence of the said negligence upon the part of the said servants of the receivers   *   *   * said street car," etc., was brought into violent collision with said wagon.

We are not of the opinion that this language charges any other specific negligence than that which was proved. It is quite general enough in its terms to include the exact condi-. tions which appeared in evidence.

The cases, therefore, cited by counsel for appellants under the second point of their brief, fail in application.

It is claimed by appellants that the damages are excessive. We have carefully examined all the evidence on this point, and we are inclined to think them quite large enough for the injuries proven. But where the evidence tends to show, as in this case, that the injury is a permanent one, which gives continual pain, which lessens the efficiency of the man for work, and leads to his losing employment after he secures it, and especially when the trouble will grow worse and not better as the man increases in age, we should be very reluctant to disturb the verdict of the jury and the action thereon of the trial judge, and substitute our judgment in a matter peculiarly within their province.

We do not feel justified in reversing this judgment, therefore, on account of its amount.

We do not think the admission of the X-ray photographs was erroneous. Appellants say the ordinary photograph can be verified by the eye, and that this is the reason why an ordinary photograph can be proved by the statement of a proper witness that it is a correct representation of the object photographed. But so, in the present stage of the art, can an X-ray photograph be verified by the eye. By looking through the fluroscope, the same things are shown to the eye as an X-ray photograph shows in a picture. All photographs, whether of the surface or of matters under the surface, are, to a certain extent, liable to represent things in a distorted or exaggerated manner and not exactly as they appear to the eye, but when, as in this case, a photograph is sworn by a competent and unimpeached witness to be a correct and ac-

curate reproduction of the condition of things as he has seen them, especially when, as in the present case also, they are taken in the personal presence and under the personal direction of the witness, although "he did not handle the apparatus," courts allow their introduction as valuable aids to investigation.   17 Cyc. 420, and cases there cited.   The law of evidence must be kept up with the advance of science. The tendency of appellants' argument on this point would discredit the results of long distance telephoning and of wireless telegraphy.

The instructions given to the jury at the instance of the Pioneer Coal and Teaming Company are complained of as erroneous and misleading.

As they did not allude to the question of the negligence of the receivers or of their servants, nor in any manner instruct the jury as to the legal relation of the receivers to the plaintiff or to the accident, we cannot see how they could have injured the receivers, nor how they are in question here. However, an examination of them does not reveal any error in them that we detect.

All the instructions offered by the receivers were given practically as offered.   The modifications were insignificant, tended to make the instructions more precise and accurate, and although excepted to and assigned for error, are not complained of in argument.   These instructions fully cover the theory of the appellants' case and state the rules of law on which they relied fully.   They include a reiterated declaration that if the collision was the sole result of conduct of the driver, the jury should find the receivers not guilty.

Objection to the fourth instruction given at the instance of the Coal & Teaming Company is based on the argument which we have already held unfounded, that the negligence which the evidence tended to prove against the receivers was not charged in the declaration.   It did, and could do, no harm to any of the defendants, and was merely a correct statement of the effect of the pleadings as distinguished from evidence.

Finding no error in the judgment of the Superior Court against the appellants, we affirm it.

*Affirmed.*