## BARTLESVILLE ZINC CO. v. FISHER.

No. 7493—Opinion Filed July 11, 1916.

Rehearing Denied August 8, 1916.

(159 Pac. 476.)

### Evidence—X-Ray Plates—Identification.

Before X-ray plates are admissible in evidence, they must be identified and their accuracy established.

(Syllabus by Rittenhouse, C.)

Error from District Court, Rogers County; T. L. Brown, Judge.

Action by L. H. Fisher against the Bartlesville Zinc Company. Judgment for plaintiff,

and defendant brings error. Reversed and remanded for new trial.

C. B. Holtzendorff, V. C. Mieher, and Rowland, Talbott & Nyce, for plaintiff in error.

H. B. Martin, A. F. Moss, and R. K. Dumbell, for defendant in error.

Opinion by RITTENHOUSE, C. This action was brought to recover damages on account of personal injuries received by L. H. Fisher on August 5, 1913, while employed at the zinc smelting plant of the Bartlesville Zinc Company. It is alleged in the petition that the plaintiff was rendered unconscious, through the negligence of the defendant, by being struck on the head with a quantity of brick fire plate, and as a result his nervous system was permanently injured.

It is assigned as error that the court improperly admitted in evidence certain X-ray plates tending to prove the existence of certain physical defects in and about the bony structure of the plaintiff's head; it being contended that such plates were not properly identified as true representations of the object they purport to represent. The admission of X-ray plates in evidence rests fundamentally on the theory that they are the pictorial communication of a qualified witness who uses this method of conveying to the jury a reproduction of the object of which he is testifying; this being true, the X-ray plates must be made a part of some qualified witness' testimony and the witness should qualify himself by showing that the process is known to himself to give correct representations, and that it is a true representation of such object.

The rule has been well considered and illustrated in numerous decisions upon this subject, and the result of the cases is well stated in Watthaus & Becker, Medical Jurisprudence, vol. 3, p. 779:

"The mere introduction of a negative, however, should not be sufficient. The ability of the operator to produce as well as to interpret the same should be questioned. The operator himself should be required to testify as to the technique employed, as well as to the developing, especially as to the use of any means whereby the plate had been artifically changed to bring into relief certain features."

See; also, Greenleaf on Evidence (16th Ed.) sec. 439; Stewart on Legal Medicine, sec. 13; Wigmore on Evidence, sec. 795; 17 Cyc. 420; Lupton v. Southern Express Co., 169 N. C. 671, 86 S. E. 614; Griffith v. American Coal Co., 75 W. Va. 686, 84 S. E. 621, L. R. A. 1915F, 803; Eckels et al. v. Boylan, 136 Ill. App. 258; Prescott & N. W. R. R. Co. v. Franks, 111 Ark. 83, 163 S. W. 180, Ann. Cas. 1916A, 773; Pecos & N. T. R. Co. et al. r. Winkler (Tex. Civ. App.) 179 S. W. 691;

DeForge v. New York, N. H. & H. R. R., 178 Mass. 59, 59 N. E. 669, 86 Am. St. Rep. 464; Doyle v. Singer Sewing Machine Co., 220 Mass. 327, 107 N. E. 949; Ligon v. Allen, 157 Ky. 101, 162 S. W. 536, 51 L. R. A. (N. S.) 842.

In the last case supra, it is said:

"To render an X-ray photograph admissible in evidence, its accuracy must be established."

The evidence afforded to identify the X-ray plates was given by Dr. Mortimer A. Houser, who testified that from an examination of the plaintiff, based upon symptoms related to him, he was unable to find the cause of the plaintiff's trouble; that he sent the patient to Dr. Butler to have an X-ray plate made; that he was not present when Dr. Butler made the plates. His testimony in this respect is as follows:

"Q. You were there when the picture was taken? A. No, sir. Q. When did you see them? A. I went there shortly after. Q. You didn't see them take the picture? A. No, sir. Q. You don't know that this is an X-ray plate of this man's head? A. Well, I know as well as anything of that kind I have done. Q. You don't know whether he ever had an X-ray picture of his head taken, do you? * * * Q. You don't know whether he ever had any X-ray picture of his head taken, do you? A. No; I didn't see it done. Q. So, so far as you know, that may be a picture of somebody else's head? A. So far as I know of my own knowledge; I didn't see it taken."

The witness further testified that his evidence, relative to the plaintiff's injuries, was based upon the information divulged by these plates. Dr. Butler, the expert who made the plates, did not testify, nor did any one who was present at the time the plates were made. The plates were not admissible in evidence, nor could they be, until they were properly identified or shown to have been made by trustworthy instruments properly used by a person skilled in making, reading, and interpreting such plates and further shown to be correct representations of the bony structure of the plaintiff's head.

The cause should therefore be reversed and remanded for a new trial.

By the Court: It is so ordered.