## CITY of BRISTOW v. PINKLEY.

No. 22528. Opinion Filed May 10, 1932.

Rehearing Denied June 21, 1932.

Wm. Cheatham, for plaintiff in error.

R. C. Burks and S. M. Cunningham, for defendant in error.

KORNEGAY. J. This is a proceeding in error from the district court of Creek county. Petition is based on personal injury claimed to have arisen from a defect in the main street of Bristow. The injury occurred between Sixth and Seventh streets and on Main street. The charging part of the petition is as follows:

"That on the 31st day of October, 1929, and for sometime prior thereto said Main street was and had been paved and covered with a concrete or hard surfaced pavement, which pavement and guttering joined, the sidewalk that was paved with concrete.

"That for sometime prior to the said 31st day of October, 1929, the said pavement on Main street in said city, and between Sixth and Seventh streets on said Main street, had been placed in bad repair, in this, to wit, that the agents and servants of the said city had dug or caused to be made a hole in said pavement. approximately eight inches deep and eight or ten inches in diameter and about 18 inches from the junction of the pavement on said Main street and the sidewalk on the west side of said Main street and approximately in the middle of the block between said Sixth and Seventh streets and in front of what was at the time known and designated as the Dixie Store. That said hole and defect in said pavement was left open and was known to the said city of Bristow, its agents, and servants prior to the times hereinafter mentioned, but that no warnings of any kind or character was placed at or near said hole to warn the public and especially this plaintiff of the danger said hole offered to the traveling public and to this plaintiff."

There was a further allegation as to an entertainment and of the plaintiff's being there to participate in it, and the following:

"* * * This plaintiff stepped from the sidewalk in front of the Dixie Store between Sixth and Seventh streets on Main street, down to the pavement, and in so stepping off said sidewalk to the pavement she stepped into said hole with her right foot, and was, with great force and violence thrown to the pavement, breaking the bones in her right foot. spraining her ankle, and tearing and straining the ligaments in her foot and ankle, from which she has suffered severe and agonizing pain and great mental anguish."

Her injuries are further described and her family relations are detailed, and what she was doing, and her earnings, and the prayer was for recovery of $10,000 damages.

The answer was a denial of the main things set out, and further set up the fact that this was on Federal Highway No. 66, and denied the allegation of bad repair and of the existence of the hole in the pavement, and averred that the pavement was in good shape. There was a denial of the entertainment being on behalf of the city, and there was a denial of a stepping into a hole by the plaintiff, and a denial of the injury and of negligence, and an averment that no notice was had of any hole in the street, and an averment that the diligence in keeping it in repair, prescribed by the laws of Oklahoma, had been used.

Trial came on before a jury and the opening statement of the plaintiff was made by her attorney, in which it was stated that the plaintiff went to the east sidewalk in front of the Dixie Store, and when she stepped off of the sidewalk and down on to the curb she stepped into a hole, the language of the attorney being:

"I don't know how deep the hole was; but it was a hole that had been cut into the edge of the curbing and down through the guttering and out to the edge of the brick pavement. The street there was paved

with brick. It was deep enough that when she stepped into it, it caught her foot and she fell over on the brick pavement. Her baby fell out of her arms. Her foot hung in the hole; and she couldn't get it out, and she commenced to holloing and complaining; and some gentlemen picked her up. One Mr. Hill took hold of her and helped her up. Other people came there. She didn't know who they were. That her foot was so caught in the hole that they couldn't get her out and they had to take her foot out of the shoe to get her foot out of the hole and then took her shoe out of the hole; that she sat there after they raised her up. She couldn't get up. She sat there on the pavement and looked and saw this hole she had stepped in still before her. It was just in front of a water meter. It was a hole eighteen inches long; and the depth she don't know. That they finally picked her up and got her in a car and took her to her mother's."

There were further allegations as to what the doctor said to her the next day. There was a statement that they could not by evidence tell just when the hole was made or by whom it was made, but that they would show the hole was there. There were further allegations as to her employment.

The city in the opening statement denied the hole being there, and it was stated that the petition was amended by interlineation, so as to show the west side of Main street. The trial resulted in a judgment for $3,500. In the assignments of error complaint is made that the judgment and verdict are contrary to law and unsupported by the evidence, and overruling the demurrer of defendant to the evidence, and of the action of the court in allowing proof of another hole or depression in the street and guttering, and in the admission of incompetent evidence, and of impeachment by plaintiff of her witnesses, and of the want of a fair and impartial trial. The matter is briefed here largely upon the ground that the legal evidence did not warrant the rendition of the judgment and the rendition of the verdict.

A good deal was said before the jury about mental anguish and the dependent condition of the plaintiff, and other things that would naturally arouse sympathy. On the other hand, is a town that is furnishing a pavement and a sidewalk for the benefit of the general public. Its liability was defined in the instruction to the jury in instruction No. 4, as follows:

"Gentlemen of the jury, you are instructed that it was the duty of the city of Bristow to use reasonable care in keeping its streets and sidewalks in a safe condition for persons using the same; and for failure to perform this duty the defendant will be liable in damages to the plaintiff if injured by reason of her stepping into a hole or any defect which has been permitted to remain in the streets, sidewalks or gutters, uncovered, for such length of time as by the use of ordinary care the defendant could have discovered and known the condition and failed to properly cover the same; and as applied to this case you are told that if you find by a preponderance of the evidence that the city of Bristow failed to use reasonable care to cover any hole or defect in the street or sidewalk mentioned in plaintiff's evidence, after notice of its condition or if you believe from a preponderance of the evidence that the same remained open and in a defective condition and repaired the same and placed it in a reasonably safe condition and that it failed to do this, and pou further find and believe by a preponderance of the evidence that the plaintiff, while traveling upon the streets, stepped into said sink or hole in the sidewalk or curb and was at the time exercising ordinary care on her part for her own safety and was injured thereby, and you further find that the negligence on the part of the defendant as aforesaid was the direct and proximate cause of said injuries, then you are instructed to find for the plaintiff; otherwise you should find for the defendant."

Instruction No. 7 was in rather general terms, and is as follows:

"Therefore, gentlemen of the jury, if you find and believe from all the testimony in this cause and by a preponderance thereof that the defendant city was negligent in maintaining its streets and sidewalks on the day and date named in the petition, in permitting holes in the said sidewalk to remain such as has been described by the testimony of the plaintiff in this case, and you further find that the plaintiff, on or about the day and date named in her petition and while exercising ordinary care on her part as that term has been defined to you in these instructions, stepped into the hole or depression in the street or sidewalk and thereby received the injuries complained of, and you further find that the injuries received, if any, were the proximate result of the negligence of the city as herein above defined, then your verdict should be for the plaintiff in such sum as you find she is entitled to receive, not to exceed the sum of $10,000.

"On the other hand, if you should fail to find that the city was negligent in the maintenance of its streets and sidewalks or if you should fail to find that the city permitted any holes or depression in the sidewalk or streets to exist and you further find that the plaintiff merely stepped off of the ordinary curbing and received her injuries thereby, then your verdict should be for the defendant; or even though you should find that the city was negligent in permitting a hole or depression along the curbing

of sidewalk to remain in the street but fail to find that the plaintiff stepped into a hole, that is, that she merely stepped off of the curbing and not into the hole and that she received her injuries by her own negligence in stepping off the curbing and into the street, then your verdict should be for the defendant."

Mental suffering was permitted to be recovered for in instruction No. 3. The instructions were so worded as to permit recovery for stepping into a hole on the sidewalk, as well as one in the street, not only that which was charged to have been the one that caused the injury, but of any hole or defect in the street or sidewalk mentioned in plaintiff's evidence. The court in one place describes plaintiff's act as "stepped into said sink or hole in the sidewalk or curb."

It is a familiar rule that the allegations of negligence are to be followed by proof in accordance therewith. The petition is the standard by which persons are to go in making proof, and the petition relied on "a hole in the pavement approximately eight inches deep and eight or ten inches in diameter and about eighteen inches from the junction of the pavement on said Main street and the sidewalk on the west side of said Main street."

During the progress of the evidence a hole in front of Hill's place, quite a distance from this and in no wise connected with the injury, was relied upon for the purpose of showing negligence on the part of the authorities of the town in the maintenance of this street.

We have examined the entire record and the briefs. We do not deem it necessary to review the evidence in detail.

The law as to the liability of the town or city is settled in this state, to the effect that a city or town is bound to use ordinary care to keep the streets in a reasonably safe condition for public use in the ordinary mode of travel. The law of liability is based on negligence of the city in failing to keep the streets in such condition after notice of defect and opportunity to correct the defective condition. It does not appear that any actionable negligence was established in this case. The statements in the petition were based upon a hole that was dangerous, if true. However, the plaintiff testified that she paid little attention to it at the time of the accident. It had water in it, and evidently if the plaintiff had looked before stepping she would not have stepped in it. Her inference as to the existence of a dangerous hole is so thoroughly discredited by her own witnesses, and the manner of her

testifying is such, that one is obliged to conclude that she knew very little about the hole or depression, if any there was there.

The cut-out, occasioned by the water pipe, had been repaired, according to the evidence that seems to be uncontradicted, something like ten days before, and it was a place where in any kind of a depression water would gather, and the depression there was at most only 1 or 1½ inches deep, according to the witness Hill, relied on by plaintiff, and it would amount to comparatively nothing as a "danger hole," according to the other witnesses.

If one will observe Oklahoma City's streets of any considerable age, he will find on almost every hand depressions of an inch to an inch and a half deep that will show up with standing water after most any rain. Even the sidewalks are full of them, and it is practically impossible to keep the sidewalks, streets, and gutters at a grade that is uniform.

We do not believe that a trial conducted in the way the evidence shows this was conducted is a fair and impartial trial, as guaranteed by our law. We are not able to say that what was established in this case showed actionable negligence on the part of the city. If what was established in this case does show such actionable negligence, a city could not very well exist with the travel of modern conditions.

Section 572, C. O. S. 1921, provides as follows:

"572. New Trial—Causes For. A new trial is a re-examination in the same court, of an issue of fact, after a verdict by a jury, the approval of the report of a referee, or a decision of the court. The former verdict, report or decision shall be vacated, and a new trial granted, on the application of the party aggrieved, for any of the following causes, affecting materially the substantial rights of such party:

"First. Irregularity in the proceedings of the court, jury, referee, or prevailing party or any order of the court or referee. or abuse of discretion, by which the party was prevented from having a fair trial. * * *

"Sixth. That the verdict, report or decision is not sustained by sufficient evidence, or is contrary to law."

We do not believe the evidence in this case is sufficient to warrant the sustaining of this verdict. We further believe that the way this case was tried, the verdict of the jury is not a fair expression as to the rights of the parties, and we further believe that there were errors of law that occurred at the trial that affected the substantial rights

of the parties that were excepted to by the city.

The case is accordingly reversed and a new trial granted.

HEFNER, CULLISON, SWINDALL, and ANDREWS, JJ., concur. McNEILL, J., concurs in conclusion. CLARK, V. C. J., not participating. LESTER, C. J., and RILEY, J., absent.