## OKLAHOMA CITY v. CANTRELL.

No. 26080.    Oct. 12, 1937.

Harlan Deupree, Municipal Counsellor, and P. E. Gumm, Asst. Municipal Counsellor, for plaintiff in error.

H. V. Lewis, for defendant in error.

PER CURIAM. This is an appeal from the court of common pleas of Oklahoma county, wherein plaintiff below, W. B. Cantrell, sued Oklahoma City for $2,500 as damages for permanent personal injuries caused by "negligent condition and construction" of Stiles street in Oklahoma City.

The parties here will be designated as in the court below.

The case was tried to a jury on June 15, 1934, and a verdict returned for plaintiff for $400.

The answer of defendant city alleged that the injury, if any, was caused by failure of plaintiff and his son to use due care for their own safety, and that the paving on Stiles street was adopted and constructed under the supervision of competent engineers in the year 1906, as a part of a plan adopted by the legislative body of Oklahoma City.

The plaintiff replied by denying any negligence of plaintiff and his son.

The defendant city requested the court to instruct the jury to return a verdict in favor of defendant city, and the court denied the same, and defendant duly excepted, and defendant city urged the same question in its motion for a new trial and duly excepted to refusal of the trial court to grant a new trial.

The plaintiff testified that he was living at Ada, Okla., but had a position at the Statehouse and had lived in Oklahoma City since March, 1933, several blocks away from the intersection of Stiles street and Park street, and that Stiles street ran north and south, and that he was injured June 8, 1933, at said intersection while riding in the back seat of an auto and the auto went into a "dip" in traveling into said intersection from the south on Stiles street, and the dip was on north side of Park street, and he was thrown to the "top" of the auto, and he thought his head struck the top of the auto, and he was tossed "pretty severely," and that he was 78 years of age. The plaintiff further testified as to his suffering great pain and as to the medical expenses.

The medical testimony was to the effect that plaintiff suffered a "compacted fracture" of the fourth cervical vertebra by reason of the accident, and was bruised, with some scars, and that medical treatment was given for some two or three months, and that the disability was from 50 per cent. to 75 per cent. in the movements of the head.

There was no dispute in that the auto was driven by Joe Cantrell, the son of plaintiff, and that he was 24 years of age and had been driving autos some ten years before the accident, and that in addition to son and father, a young lady cousin to the son was in the auto at the time of accident. The cousin did not testify.

Joe Cantrell testified that the accident occurred at from 5:30 to 6:30 p. m., on the day mentioned, and that he was driving at a speed of from 20 to 25 miles and entered the intersection and "never seen the dip until front end went in and out" and father "hollered and groaned and taken on" and "I pulled her to the curb."

The son further testified that he lived at Ada and was visiting with his father at the time.

The father testified that the son drove the auto to the Statehouse to take him home, and "we drove in town" to obtain some drugs for his wife, and that they were on way home from town when entering the intersection.

The son further testified he examined the intersection several days later, and "the street is rounded up in the middle—I imagine the left wheel was practically in the middle, but the dip in the middle of the street is deeper than it was on the sides," and "I imagine it was four inches deeper than it was on the outer edge."

He further testified in his judgment it was eight to twelve inches deep in the middle.

Mr. Hawkins for plaintiff testified he lived at the southwest corner of the intersection and that the streets and intersections were paved about 1906, and that the paving had "drains or furrows or depressions on each side of the street that would constitute a gutter," and that the drains run east and west across Stiles street, and that water could not stand on the street or intersection, and that he did not know whether these drains were deeper than in other parts of the city, and that these drains were about six inches deep and about six feet wide.

Witnesses testified as to jolting of autos traveling over this intersection at 25 miles and more per hour.

No witness testified as to any other accident ever occurring at this intersection or as to there ever being any complaints as to this intersection being dangerous.

Photos of the intersection were introduced in evidence by defendant, and the city superintendent of streets testified in his seven years as such officer there had been no complaint as to these streets or this intersection, and that he was constantly inspecting and repairing streets and paving.

There was no conflict in the testimony, but some difference as to the depth of the "dip," or "drain."

The court gave an instruction on the contributory negligence of the plaintiff, but refused an instruction requested by defendant as to the contributory negligence of the

driver of the auto, the son, Joe Cantrell, and defendant claims this instruction was requested by reason of the evidence showing that plaintiff was on a mission of his own.

Several of the witnesses lived near the intersection.

There is no dispute as to a "drain" or that plaintiff was injured.

It is clear from the evidence that there was no negligence on the part of the defendant city.

While having in mind that we find but one question, still we have reviewed somewhat in detail.

In volume No. 43 of C. J., at page 1278, paragraph 2042, we find ample authority that where one inference only can be drawn from the evidence as to the existence of negligence, the question becomes one of law for the court.

The son made no complaint as to his being jolted.

There was no evidence that the intersection of this "drain" or "dip" was dangerous.

Witnesses testified who lived near the intersection.

The intersection is in a residential section of Oklahoma City that was paved about 1906 and "drains" constructed as a part of the paving.

It is common knowledge that any driver should reduce speed of auto when traveling on old paving.

From the photos and the evidence, it is clear that the "dip" or "danger" could not have been anticipated as a danger by the defendant city, and is to be classed as a mere trivial defect in the street, and that the defendant city was not negligent in failure to exercise reasonable care in maintaining this intersection in a reasonably safe condition for travel by those using it in a proper manner.

These principles have been definitely announced by this court in City of Tulsa v Frye, 165 Okla. 302, 25 P. (2d) 1080, and also in City of Bristow v. Pinkley, 158 Okla. 104, 12 P. (2d) 229; City of Ada v. Burrow, 171 Okla. 142, 42 P. (2d) 111, and Lewis v. City of Tulsa, 179 Okla. 176, 64 P. (2d) 675, and in other cases.

In view of our conclusion, it would serve no useful purpose to review the other questions.

This cause is reversed and remanded, with instructions to render judgment in favor of defendant city.

The Supreme Court acknowledges the aid of Attorneys J. W. Reece, John F. Vaughan, and T. A. Higgins in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Reece and approved by Mr. Vaughan and Mr. Higgins, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

OSBORN, C. J., BAYLESS, V. C. J., and WELCH, CORN, and HURST, JJ., concur.