## O. C. CAB SERVICE v. ASKEW.

No. 28162. May 10, 1938.

Cruce, Satterfield & Grigsby, for plaintiff in error.

O. A. Cargill (O. A. Cargill, Jr., of counsel), for defendant in error.

GIBSON, J. In this case, which involves injury to a little girl struck by a taxicab while she was crossing the street, two grounds for reversal are urged by the taxicab company, against which judgment was rendered on verdict of a jury. It is contended that the evidence of negligence is insufficient to support the verdict and that X-ray pictures offered and used in evidence were not sufficiently identified as those of the injured child.

The injury occurred at night when the child started back across a street bordering on a public school grounds. A school entertainment was being held that night and cars were parked along the side of the street opposite a school entrance. The company contends that its taxicab driver was not negligent, that the girl darted out from behind a parked car into the path of the taxicab. For the child it is contended that she had started back to the school grounds by a customarily traveled route; that the taxicab was traveling at a rate of speed in excess of the rate prescribed by city ordinances; that the driver did not keep proper lookout, did not have proper control, and that the taxicab's brakes were defective.

The evidence showed that the brakes were in good condition. The speed limit at the place of accident was 25 miles per hour. Witnesses placed the speed of the car at from 20 to 30 miles per hour. There was evidence that the taxicab stopped 20 steps or 60 feet after striking the child. Impeachment of the plaintiff's witnesses was sought by showing that they had made oral and written statements near the time of the accident greatly at variance with their testimony, and particularly had declared that the speed of the car was not over 25 miles per hour. Other impeaching evidence was offered. This court, however, cannot take the place of the jury and determine that all of plaintiff's witnesses gave such incredible testimony as not to be believed on any point.

There was evidence that the taxicab was driven along the center of the street and not on the right side. There was evidence from which the jury could infer that the driver of the car was not keeping proper lookout. In fact, the driver's own testimony is to the effect that he saw children on the school side of the street and that he kept watching them. From his evidence the inference is plain that he did not keep a lookout in front or to the side from which the girl came. According to his testimony also there were cars parked on the west side of the street (his left-hand side) and more parked on the east side, where children were playing all along, off and on, the curb. Because of this, he said he kept his eyes on them, and was near the alley when broken glass hit his windshield, followed by the girl's body striking his door. In entering this block, he asserted, he was driving his car at low speed, but had shifted into second speed and was going at 20 miles an hour when the accident occurred. The night was very dark.

It is apparent that there was sufficient evidence from which the jury could find that the car was being driven at excessive speed, that the driver, under all the circumstances, was not driving with the care that an ordinarily prudent man would have used, or that he was not keeping proper lookout or having due regard to the safety of pedestrians. The matters were submitted to the jury under instructions which are not here challenged.

Many cases are cited where drivers of cars, using due care or traveling with ordinary prudence, have been exonerated where accidents have occurred because children or pedestrians have suddenly darted into the path of the oncoming vehicles. The basis of those cases generally is that the action of the child or pedestrian was so sudden that nothing that the driver could have done would have prevented the accident. We cannot hold, however, that the driver here was unquestionably using due care. We cannot say, for example, that it is due care for a driver in the circumstances here to rivet his attention entirely upon the happenings on one side of the street and neglect thereby to observe the other half at all or even to watch in front, as the jury may have found the case here. Furthermore, according to his statement, he was driving within two feet of the east curb, which would make the

left side of his car 10 to 12 or more feet from the cars parked on the west side of the street. Hence, if the girl was traveling half as fast as he says he was, his car should have been between 20 to 30 feet away from her when she started from the street side of the parked cars. Within this distance he no doubt could have seen her if he had been looking. Other legitimate inferences from the testimony would place the distance greater, so that it could not reasonably be contended that the girl suddenly darted out in front of his car so as to relieve him of liability. There are other sufficient facts and circumstances as hereinabove indicated to take the question to the jury and to distinguish this case from the cases cited.

The complaint that the X-ray pictures were not properly identified rests largely on the fact that the person who took the pictures did not testify as to their accuracy. X-ray pictures do not prove themselves, and it is true, as a general rule, that the person who took the pictures is the proper person to identify them and to show that they were taken by the ordinary or customary X-ray process. The physician who interpreted the X-ray pictures under consideration here did not take them. He testified that they were taken under his direction and that they were pictures of the arm, shoulder, and skull of the girl. The injuries were broken and fractured bones in the arm and at the shoulder, and a fractured skull. In answer to a question by the court, the doctor, after examining the pictures, declared that they were pictures of the girl's arm, shoulder, and skull.

Although objection was made to the introduction of the photographs, the doctor was allowed to testify as to the breaks and fractures shown by the pictures. He also was permitted to testify that a bone specialist was called in to fix the fractures. Furthermore, without the use of X-ray pictures he testified concerning other injuries the child had. He further testified as to pain and suffering she underwent, and also as to the probable effect on her future condition, all without objection. Another physician, without objection, testified about injuries to her eyes and ear caused by the accident. The fact that the bones were broken seems to have been evident. A police detective testified, without objection, that the girl was unconscious and had some broken bones. The testimony is to the effect that the bones mended rapidly and well. We find nothing to refute the claim that bones were in fact broken and fractured. There is no claim that the nature of her injuries would throw any light on the other question raised, negligence or lack of negligence. Moreover, no argument is made as to excessiveness of the verdict; it is unquestioned that the girl was knocked unconscious and painfully injured.

Under all of these circumstances, therefore, we cannot see how the admission of the X-ray photographs, if error, is of such substance as to warrant a reversal of the case.

The cause is accordingly affirmed.

BAYLESS, V. C. J., and RILEY, PHELPS, and HURST, JJ., concur.