THOMPSON et al. v. WALSH.

No. 33850.　Oct. 10, 1950.

*223 P. 2d 357.*

Dwight Tolle, of Okemah, for plaintiffs in error.

Clem H. Stephenson, of Wewoka, and James R. Eagleton, of Oklahoma City, for defendant in error.

LUTTRELL, J.　This action was brought by Arthur Walsh, plaintiff, against the defendants, George F. Martin, M. P. Springer, and R. P. Bates, as owners of an oil and gas mining lease, and V. V. Thompson, as their operating agent in charge of said lease, to recover damages to plaintiff's cattle resulting from the pollution of a stream running through plaintiff's land by salt water from oil wells owned and operated by defendants. The trial court overruled the demurrer of defendants to plaintiff's evidence and their motion for a directed verdict at the close of all the evidence, and submitted the cause to a jury which returned a verdict in favor of plaintiff. Defendants appeal.

For reversal defendants contend that the verdict cannot be sustained because the plaintiff failed to establish a causal connection between the alleged pollution of the stream and the injury received. In arguing this contention they urge (a) that there was no competent proof that any poisonous solution was produced by or escaped from defendant's lease; (b) that there is no evidence that plaintiff's cattle drank any poisonous solution alleged to have es-

caped from defendants' lease; (c) that there is no competent evidence that the death or injury of plaintiff's cattle was caused by the drinking of salt water; (d) that the injuries alleged occurred prior to the alleged escape of salt water from defendants' lease, and therefore the salt water could not have caused the injuries complained of; and (e) that a summary of plaintiff's evidence shows that the injuries to his stock could not have been caused by the alleged negligence of defendants. Under these propositions, briefly stated, defendants assert that there is no evidence that salt water escaped from their lease prior to 1946, or that the cattle of plaintiff drank from the stream, or that the salt content of the water, if there was salt water in the stream, was of such amount as to cause injury to plaintiff's cattle. We are unable to agree with the various contentions of defendants.

From plaintiff's evidence it appears that he rented certain lands in sections 21 and 22, township 13 north, range 10 east in Okfuskee county, and that during the years 1945 and 1946 he operated a dairy, pasturing his cattle upon portions of both sections; that the small creek in question did not run all the year round, but ran only when it rained, and that the water stood in pools for the greater portion of the two years; that this creek was the sole water supply in plaintiff's pasture in section 21; that the defendants' lease with two producing wells thereon produced at least seventy-five barrels per day of salt water, and that this was the only place upon the creek from which salt water could escape into the stream. A number of witnesses testified that the water in the stream was salty, but it was never analyzed, so that the exact amount of salt contained therein was definitely established. However, plaintiff testified that the water was salty both in 1945 and 1946; that during those years he had a number of cattle die; that some of his cows lost their calves, and that additional stock was damaged

by drinking salt water from the stream. He further testified that in 1945 and again in 1946 he interviewed the defendant Thompson, who operated the lease for defendants, advising him that the stream contained salt water which escaped from defendants' wells, and was causing injury to his cattle, and requesting that something be done about it. Thompson admitted that on two occasions plaintiff complained of the salt water coming from the wells into the stream, but asserted that plaintiff only requested to know where he could find the owner of the lease. Plaintiff testified that on one occasion, in 1946, when he interviewed Thompson, he observed salt water running from a point near the wells of defendants into the creek.

In 1946 plaintiff had a veterinary make a post mortem examination of one of his cows, and the veterinary testified that her death was caused by drinking salt water. He also testified that he examined a number of the cattle owned by plaintiff at that time and from the condition of their mouths and their general appearance it was evident that they had been drinking salt water. He testified further that if the cattle drank salt water as strong in solution as that which caused the death of the cow which he examined, it would undoubtedly injure or kill them. He at that time tested the water in the creek and testified that in his judgment the amount of salt water then contained therein would not be injurious to cattle, but that at that time the creek was running, it having recently rained.

The defendant Thompson, who had charge of the lease, testified that no salt water escaped therefrom into the creek. To impeach his credibility, plaintiff and three other witnesses produced by him testified that the day before the trial of the case they went up the creek to the lease of defendants; that at that time the water in the creek tasted salty although the creek was

running, and that upon that occasion they all observed salt water running down from defendants' lease into the creek. It was established that the creek was the sole water supply for cattle pastured in the northeast quarter of section 21.

Defendants produced testimony contradicting the evidence of plaintiff that the water in the creek was salty or unfit for cattle to drink, but did not have the water analyzed, and their superintendent admitted that there might have been times when salt water escaped from the lease and ran into the creek. There was no evidence tending to prove that plaintiff's cattle suffered from any disease of any kind. The veterinary testified that he tested the cattle for Bangs disease and found that they were free from that disease. Nor did defendants offer any proof tending to show that the values placed upon the cattle by plaintiff were incorrect.

The evidence produced by plaintiff was, in our judgment, sufficient to justify the trial court in submitting the cause to the jury, and to sustain the verdict. Plaintiff was not required to make proof of the causal connection, or that the death of the cattle was due to the drinking of salt water produced from defendants' wells, to a degree beyond all doubt.

In Mid-Continent Petroleum Corp. v. Miller, 183 Okla. 27, 79 P. 2d 804, we said:

"In a civil case all that the plaintiff is required to prove in order to establish causal connection between defendant's negligence and plaintiff's injury is to make it appear more probable that the injury came in whole or in part from the defendant's negligence than from any other cause, and this fact may be established from circumstantial evidence."

While plaintiff's evidence does not establish beyond all doubt or question that his cattle died from drinking salt water contained in the stream and produced from the wells of defendants, it appears to us that when his evidence showed that the creek was the sole source of water supply and that the water was salty, that the defendants' wells were the only source from which salt water could get into the creek, and that examination of his cattle by the veterinary in 1946 showed that the death of one had been caused by salt water and that the others were suffering from the effects of drinking salt water, the conclusion is almost inescapable that the death of and injury to plaintiff's cattle was occasioned by their drinking salt water escaping into the stream from defendants' wells. The evidence in the case is similar to that produced in Mid-Continent Petroleum Corp. v. Miller, supra; Helmerick & Payne v. Green, 183 Okla. 164, 80 P. 2d 573, and Atlantic Refining Co. v. Fulsom, 185 Okla. 357, 91 P. 2d 758. In all those cases we held that although the testimony did not establish directly that the cattle died as the result of drinking from the stream, it was sufficient to require the submission of the case to the jury, and to sustain the verdict for plaintiff.

Defendants rely strongly upon Prest-O-Lite Co., Inc., v. Howery, 169 Okla. 408, 37 P. 2d 303, and Shell Petroleum Corp. v. Worley, 185 Okla. 265, 91 P. 2d 679. The evidence in these cases, however, failed in some vital respects, and no such failure appears in the evidence of the plaintiff in the instant case. Thus in Shell Petroleum Corp. v. Worley, supra, there was no evidence that plaintiff's pecan trees died from the effects of salt water, but the evidence tended to show that their death might have resulted from several other causes, and the experts produced by defendants testified that an analysis of the soil on plaintiff's land showed only a normal salt content, and that the salt content in the water was too weak to kill, or even injure the pecan trees.

In Prest-O-Lite Co., Inc., v. Howery, supra, the evidence did not show that the water in the stream contained any injurious substance, or that the

death of the chickens and stock was occasioned by drinking the water from the creek. In that case we stated that it was noted that no proof was offered by plaintiff to show that the substances mentioned in his petition, or any other deleterious substances, were present in the water during the time the damages were incurred. In the instant case plaintiff testified that the water was salty in 1945 and 1946, and that he complained in each of. these years to the man in charge of the leases, and that on the last occasion when he complained he saw salt water escaping into the creek. In view of this evidence and of the testimony of the veterinary that the cattle he examined had been affected by drinking salt water, the trial court did not err in submitting the cause to the jury, and the evidence was sufficient to sustain the verdict.

Defendants next contend that there is no competent proof upon which to fix the amount of damages for the reason that the dates of some of the alleged losses sustained by plaintiff were not given, and for the further reason that the testimony does not show the escape of salt water from defendants' wells prior to 1946. Since plaintiff only claimed damages for injury to his cattle during the years 1945 and 1946, and since he admittedly complained in both of those years of the escape of salt water into the creek, causing damage to his cattle, we are unable to agree with this contention of defendants.

Lastly, defendants contend that the testimony of the plaintiff and three of his witnesses, that on the day before the trial they saw salt water running from the wells of defendants in to the creek, was incompetent, irrelevant and immaterial and that the trial court erred in admitting it. This evidence was offered by plaintiff solely for the purpose of impeaching the testimony of the defendant V. V. Thompson, who testified that salt water never escaped from defendants' lease into the creek in question, and the trial court instructed the jury that it was to be considered for

that purpose only. The admission of this testimony for that purpose was not erroneous.

Affirmed.

DAVISON, C. J., ARNOLD, V. C. J., and WELCH, CORN, HALLEY, JOHNSON, and O'NEAL, JJ., concur.