MID-CONTINENT COACHES, Inc., v. GUTHRIE.

No. 35626.   May 26, 1953.

*257 P. 2d 829.*

Dudley, Duvall & Dudley, Oklahoma City, for plaintiff in error.

Schwoerke & Schwoerke and James E. Grigsby, Oklahoma City, for defendant in error.

JOHNSON, V.C.J. Fannie Hope Guthrie, defendant in error, hereinafter referred to as plaintiff, while in a bus station in Woodward, Oklahoma, operated by W. A. Toler, fell, breaking her leg. She brought this action against W. A. Toler, the operator of the bus station as the agent of Mid-Continent Coaches, Inc., and Mid-Continent Coaches, Inc., plaintiff in error, hereafter referred to as defendant.

A demurrer to the evidence was sustained as to Toler. A jury verdict was rendered for plaintiff in the amount of $15,000 against the defendant, and a judgment accordingly, from which defendant appeals.

Plaintiff alleged that the defendant operates a bus station in Woodward, Oklahoma, which Toler was operating at the time of the accident as the agent, servant and employee of the defendant; that in the rear of the bus station is a ladies' rest room, and in front of the door thereto is a floor drain two and one-half to three inches lower than the remainder of the floor, the floor and the slope to the drain being covered with inlaid linoleum; that the building is poorly lighted and this area was shadowed. That on November 8, 1950, plaintiff entered the bus station about 9:00 p.m., for the purpose of meeting her niece, who was to arrive on defendant's bus; that when she walked toward the rest room, she stepped into the depression for the floor drain, and was thrown off balance and fell. She alleged that defendant was negligent in (a) not providing sufficient light; (b) allowing a dangerous depression to exist in a pathway used by the public; (c) failing to provide warning

of the dangerous condition of the pathway; (d) maintaining a trap. That plaintiff's fall caused a severe fracture of her right femur just above the knee; that her medical expenses incurred and reasonably expected to occur amounted to $4,960, that employment of household help would cost plaintiff $19,125, and that her pain and suffering entitled her to $15,000.

The defendant answered, denying, generally, the allegations of the petition, the agency of Toler, and alleged contributory negligence on the part of the plaintiff and that the accident was unavoidable.

Toler filed a general denial. Plaintiff replied to the separate answer of Mid-Continent Coaches, Inc., and denied specifically each and every allegation contained in the separate answer of the defendant except those which were admitted. The plaintiff alleged further that the Corporation Commission of the State of Oklahoma, by 47 O. S. 1951 §162, is vested with power and authority to supervise and regulate the business of defendant as a motor carrier and to prescribe rules and regulations therefor; that rule 18 (b) of General Order No. 15679 of the Corporation Commission provides that motor carriers of passengers shall establish and maintain adequate and suitable station facilities at points served by them. That when the defendant obtained a permit as a common carrier of passengers from the Corporation Commission, the duty was cast upon it to establish and maintain an adequate and suitable station at points served by it, including Woodward, Oklahoma, and that it cannot by contract with the defendant, W. A. Toler, for the operation of the Woodward, Oklahoma, station, relieve itself from liability for the negligence of W. A. Toler in the operation of said station, and plaintiff further prayed for judgment as set forth in her petition.

Defendant argues its assignments of error under six propositions. The first proposition is:

"As a matter of law, defendant, a non-passenger, was not liable for plaintiff's injuries because of the absence of proof that defendant owned, operated or was responsible for the condition of the bus station."

It was stipulated that defendant is a common carrier under authority from the Corporation Commission, certificate No. A-531, and that it has a bus stop at Woodward, Oklahoma, and uses the facilities of the bus station where the accident occurred, including the ladies rest room.

It is undisputed that plaintiff was not an intended passenger of the defendant, but had gone to the bus station to meet her niece, who was due to arrive within a short time as a passenger on defendant's bus.

In Atchison, T. & S.F. Ry. Co. v. Cogswell, 23 Okla. 181, 99 P. 923, we held that a common carrier is bound to exercise ordinary care for the safety of a person who is upon its premises for the purpose of meeting an incoming passenger, and is liable to such person for injuries sustained on account of the carrier's failure to exercise such care. To the same effect is our holding in St. Louis & S.F. Ry. Co. v. Stacy, 77 Okla. 165, 171 P. 870.

While it is true that the bus station was rented from the owner of the building by the defendant's agent, and a portion of the space was sub-rented for a cafe, yet it admittedly used the rest room facilities. The general rule governing this situation is stated in 10 Am. Jur., Carriers, p. 190, §1288, "Stations not owned or controlled by carrier", and reads as follows:

"With respect to the liability of a common carrier of passengers for injuries caused by defective premises not owned or controlled by the carrier, the general principle has often been applied that one who, although not strictly in control of a defective agency or dangerous place, uses it for his own benefit or for his own purposes and invites another to make use of the same may

be held liable to the latter for an injury caused by the defect or danger. * * *"

This rule was recognized in Herrman v. Great Northern Railway Co., 27 Wash. 472, 68 P. 82, and applied in Missouri, Kansas & Oklahoma Coach Lines, Inc., v. Burton, 181 Okla. 45, 72 P. 2d 385. In the Burton case, supra, we held that it was a bus company's duty to provide safe conditions for its passengers at hotel used as a bus station under arrangements with hotel owner; and that in action against a bus company for injuries sustained by a passenger from a fall at the curb while walking to the bus from the bus station located in the hotel, evidence that the curb was 18 inches above the street level with only one intervening step which was 6 inches wide and 12 inches high constituted sufficient showing of negligence in providing safe conditions at the bus station to justify granting a new trial after judgment for the bus company.

Therefore, defendant's first proposition is untenable.

Defendant's second proposition, that "The court erred in holding that defendant owed any duty toward plaintiff other than not to wilfully injure her", is likewise untenable. The defendant bus company did not owe plaintiff, when she entered the bus station for the purpose of meeting her niece, an incoming passenger, the highest degree of care that it owes a passenger in transit, but only ordinary care to keep its premises and station in a reasonably safe condition. See Burton and Cogswell cases, supra, and Wheeler v. Southeastern Greyhound Lines, Inc., (Ky.) 238 S.W. 2d 145.

Defendant's third proposition is that "the court erred in admitting in evidence Rule 18(b) of General Order No. 15639 of the Corporation Commission," which required motor carriers of passengers to establish and maintain adequate and suitable station facilities at points served by it; and that schedules shall be so arranged as to accommodate passengers in the use of sanitary comfort stations at points along the route. Error is urged on the ground that this rule was not properly identified or shown to be in force and effect at the time of the accident. This contention is without merit.

The liability of bus company for unsafe conditions at bus stations is a question of law, and introduction of a Corporation Commission's rule without identification was not error where the rule required no more of the bus company than was already required of it under the law.

In Missouri, Kansas & Oklahoma Coach Lines, Inc., v. Burton, supra, we said that the question of liability of a bus company for unsafe conditions at bus stations is a question of law, and that such carriers are required to provide for passengers all such accommodations as are usual and reasonable; that compliance with such requirements in bus travel necessitates rest periods at reasonable intervals and safe conditions at the bus station. In this connection, however, defendant asserts that its liability extends only to passengers and since plaintiff was not a passenger it owed her no duty. This last contention was disposed of under defendant's propositions one and two.

We next consider the defendant's fourth proposition, that "there was no evidence of negligence on the part of defendant".

The negligence alleged is that a combination of conditions caused the plaintiff's accidental injury, that is, a depression in the floor at the drain which was near and directly in front of the ladies' rest room door, and failure of defendant to provide sufficient light, causing darkness in the vicinity of the depression which included the pathway traveled by the public. The existence of the depression and the fact that plaintiff fell and was injured is admitted, but the evidence is conflicting as to the sufficiency of the lights in the vicinity of the

depression. Photographs were admitted which show that the drain was directly in front of and near the door to the rest room and had a short slope or incline of about two and one-half inches from the top of the incline to the bottom of the drain, which is covered with linoleum and that it was about 30 inches in diameter, being similar to drains used in garages and rest rooms. The evidence disclosed that the drain had been in the ladies rest room until the rest room had been moved and one unacquainted (as was the plaintiff) with the location of the drain would not ordinarily expect to find one so located. No useful purpose was shown justifying the location of the drain in the pathway leading to the ladies rest room, thus tending to negate the fact that the floor was in a reasonably safe condition. 65 C.J.S., Negligence, §§45 and 274.

In defense of this fact situation defendant contends that this linoleum covered gentle slope or slight incline in the floor of the bus station did not constitute negligence. Citing in support of this contention, City of Bristow v. Pinkley, 158 Okla. 104, 12 P. 2d 229; City of Tulsa v. Frye, 165 Okla. 302, 25 P. 2d 1080; Oklahoma City v. Cantrell, 181 Okla. 56, 72 P. 2d 381; Sanders v. McMichael, 200 Okla. 501, 197 P. 2d 280; Sears Roebuck & Co. v. Johnson (10 Cir.) 91 F. 2d 332.

Generally, a slight slope or incline in floor or walkway in a store, office or public building, does not of itself constitute negligence; Oklahoma Natural Gas Co. v. Glazier, 192 Okla. 516, 137 P. 2d 584. In that case numerous cases from other jurisdictions are cited with a brief resume of the facts and court's holding which we think, together with our holding therein, sustains the trial court in the case at bar. In the syllabus of the Glazier case, it is stated:

"Where the evidence showed an incline upon the floor of defendant's office and a waxed condition of the floor covering, rendering it 'very slick', and the evidence reasonably tends to show that plaintiff, a customer of defendant, slipped on the inclined waxed part of the floor and fell, receiving the injuries sued for, it was not error to overrule a motion of defendant for a directed verdict in its favor."

and in the body of the opinion we said:

"It is first asserted that there is no negligence under ordinary circumstances in the use of a smoothly waxed floor.

"* * *

"It is contended that the slope or incline in the floor, such as is shown by the evidence in this case, is too slight to constitute negligence. A number of cases involving slopes or inclines in sidewalks, walkways, floors, etc., are cited in support of this, among which are Oklahoma City v. Cantrell, 181 Okla. 56, 72 P. 2d 381; City of Tulsa v. Frye, 165 Okla. 302, 25 P. 2d 1080, and similar cases. Only a few of the cases cited are applicable, since they involve the question of liability of cities for defects in the plans, specification, etc., in the construction of public ways. As a general rule, the maintenance of waxed or oiled floors in stores, offices, etc., is not of itself negligence. Likewise, a slight slope or incline in the floor or walkway does not of itself constitute negligence. *We are here dealing with a combination of two conditions. Under such conditions it may be said a question of fact is presented for a jury's decision.*" (Emphasis ours)

Defendant's fifth proposition is that there is no evidence that the negligence complained of was the proximate cause of the injury to plaintiff.

The evidence of the plaintiff discloses that she, with her husband, went to the Union Bus Station at Woodward a short time before the scheduled time for the arrival of the bus on which she was expecting her niece; that she and her husband went to the front of the bus station and sat down for a while and then decided to go uptown. Before doing that she asked the lady at the counter where the rest room was and she said "Right back there", indicating the back of the room. She went back that way, and it was very dark.

"There was a light over the desk when I went back there, and I just looked back, I didn't get down to look along the floor, and the door was painted white and the walls were very dark, and I walked back that way not knowing there was a floor drain, so I stepped in the floor drain and fell down and broke my leg."

She further testified that the door to the rest room was not open and that the drain was right in front of the rest room door. She was asked if she was in the habit of falling down or stumbling and her answer was "I am not". She was asked "What happened then", and after several intervening questions she was asked again "Alright, now what happened?" "How did you fall; I mean, which way did you fall; backward, sideways, frontward, or how?" and she answered:

"Those are just things you hardly thoroughly remember until you get down; but I seen I was going to fall, and I do recollect that I put out my left hand. I realized also there was nothing to touch, and, of course, I just went down. It threw me kind of in a twist."

She was then asked "When you found yourself on the floor, just the best you can, tell the jury which way you were lying?" to which she answered:

"Well there was a wall on the right-hand side of me as I went towards the rest room door, and when those that came to me, which was, one of them was my husband, and I remember one being Mr. Toler, and a young man which I didn't know and had never seen, and one lady, and I don't know who the lady was, but anyway, when they got me straightened around, I put my hand—my head was towards the wall that was to the right of me, and kind of a little to the east, and I had my arm, after I had been straightened around, right in that drain, and I said, 'My, my, what a trap here on the floor'."

Defendant contends that this evidence is insufficient in that it fails to show that plaintiff slipped, or that she could not have seen the depression on the floor had she looked; that she was looking at the door of the toilet to see which way it opened; that she wasn't watching where her feet were going; that no other witness testified to anything other than she fell.

It is argued that this evidence leaves to conjecture the cause of plaintiff's fall. Citing Tweed v. First National Bank Bldg. Corp., 203 Okla. 31, 218 P. 2d 356, and other cases of similar import. Such cases are based upon the proposition that in the absence of evidence showing an unsafe condition of the premises, the mere fact that a plaintiff slipped and fell at the time and place raises no presumption of negligence on the part of the owner or lessee of the premises. This rule is not applicable to the facts in the instant case as it is shown by the evidence outlined above and under propositions one and two hereinbefore considered that the premises were in an unsafe condition.

The rule of causal connection or proximate cause is well stated in Thompson v. Walsh, 203 Okla. 453, 223 P. 2d 357. There we said:

"In a civil case all that the plaintiff is required to prove in order to establish causal connection between defendant's negligence and plaintiff's injury is to make it appear more probable that the injury came in whole or in part from the defendant's negligence than from any other cause, and this fact may be established by circumstantial evidence."

and in Oklahoma Natural Gas Co. v. Gray, 204 Okla. 362, 230 P. 2d 256, the rule is stated as follows:

"* * * The rule is settled that, where different conclusions may be drawn from the evidence, the existence of negligence and the question of proximate cause of an injury are questions to be determined by the trier of facts. * * *"

Defendant's sixth and last proposition is:

"The court erred in admitting X-rays in evidence without proper identification and in permitting plaintiff's attorney to display them to the jury."

Defendant cites in support of this proposition Bartlesville Zinc Co. v. Fisher, 60 Okla. 139, 159 P. 476; Call v. City of Burley, 57 Idaho 58, 62 P. 2d 101; Ligon v. Allen, 157 Ky. 101, 162 S. W. 536, 51 L.R.A. (N.S.) 842; National Life & Accident Ins. Co. v. Robertson, 169 Okla. 136, 36 P. 2d 479, and Southwestern Cotton Oil Co. v. State Ind. Com., 167 Okla. 294, 29 P. 2d 122, but principally relies upon the Fisher case. These cases are based upon the theory that admission of X-rays without proper indentification and expert explanation constitutes reversible error because no identification of the injuries is possible or that no connection is shown between the injured and the injuries shown thereby; or, if there is, such pictures or negatives must be read and explained by experts. But the rule is not applicable where other and competent evidence tends to prove the same facts. O. C. Cab Service Co. v. Askew, 183 Okla. 6, 79 P. 2d 811.

The record herein discloses that there were 17 X-rays introduced, thirteen of which were merely shown to the jury through an electric view box without the identification or explanatory interpretations of an expert. It is contended that the introduction of these X-rays without medical or professional interpretation was error; and if this were the only evidence to establish the extent of plaintiff's injuries, such contention would prevail, but four of the X-rays introduced were identified as pictures of plaintiff's bodily injuries by Dr. C. R. Rountree who treated her immediately after her injury and during her recuperation. He was an orthopedic specialist qualified to read X-rays and he presented these X-rays to the jury and explained them and testified as to the extent and degree of plaintiff's injuries. Defendant offered no extenuatory medical evidence as to the degree or extent of plaintiff's injuries or amount of resulting damages.

No complaint is made that the amount of the judgment is excessive. The only purpose of the introduction of X-rays and medical testimony was to establish the extent and degree of plaintiff's injuries and amount of resulting damages, and since this was done by other competent medical testimony and other X-rays which were identified and read by a qualified physician, the error, if any, was harmless. O. C. Cab Service Co. v. Askew, supra. There in the second paragraph of the syllabus we said:

"Admission of incompetent evidence is not necessarily harmful where other and competent evidence tends to prove the same facts, or where from the whole case it reasonably appears that the facts to which such evidence is relevant are not in reality in dispute."

In the body of the opinion it is stated:

"The complaint that the X-ray pictures were not properly identified rests largely on the fact that the person who took the pictures did not testify as to their accuracy. X-ray pictures do not prove themselves, and it is true, as a general rule, that the person who took the pictures is the proper person to identify them and to show that they were taken by the ordinary or customary X-ray process. The physician who interpreted the X-ray pictures under consideration here did not take them. He testified that they were taken under his direction and that they were pictures of the arm, shoulder and skull of the girl. The injuries were broken and fractured bones in the arm and at the shoulder, and a fractured skull. In answer to a question by the court, the doctor, after examining the pictures, declared that they were pictures of the girl's arm, shoulder, and skull.

"Although objection was made to the introduction of the photographs, the doctor was allowed to testify as to the breaks and fractures shown by the pictures. He also was permitted to testify that a bone specialist was called in to fix the fractures. Furthermore, without the use of X-ray pictures he testified concerning other injuries the child had. He further testified as to pain and suffering she underwent, and also as to the probable effect on her future condition, all without objection. Another physician, without objection, testified about injuries to her eyes and ear caused by

the accident. The fact that the bones were broken seems to have been evident. A police detective testified, without objection, that the girl was unconscious and had some broken bones. The testimony is to the effect that the bones mended rapidly and well. We find nothing to refute the claim that bones were in fact broken and fractured. There is no claim that the nature of her injuries would throw any light on the other question raised, negligence or lack of negligence. Moreover, no argument is made as to excessiveness of the verdict; it is unquestioned that the girl was knocked unconscious and painfully injured."

Under all the circumstances, we are of the opinion that the cause should be affirmed.

Judgment affirmed.

WELCH, CORN, DAVISON, O'NEAL, WILLIAMS, and BLACKBIRD, JJ., concur.