CITY OF WAGONER V. BLACK.

*97 P. 2d 21.*

No. 28976.  Dec. 12, 1939.

W. O. Rittenhouse and Fred W. Martin, both of Wagoner, for plaintiff in error.

Bailey E. Bell, of Tulsa, and Watts & Watts, of Wagoner, for defendant in error.

DAVISON, J.  The defendant in error, as plaintiff, commenced this action to recover $10,000 in damages from the plaintiff in error, as defendant, for personal injuries from a fall he received upon one of the defendant's streets. The fall occurred when the plaintiff stumbled over a wire extending across Ninth street immediately after walking into said street from Smith avenue at approximately 7:30 p. m. on April 19, 1937. Both streets are unpaved.

The plaintiff's fall was caused by a piece of telephone wiring, one end of which was fastened to a stake on one side. of Ninth street while the other end lay in some weeds on the other side of said street. It was placed there early in the afternoon of April 19th, by John Smith and Floyd Riddle after being used that day in their work. Said work consisted in digging a ditch along Smith avenue to its intersection with Ninth street, and was part of a street improvement project being performed with unskilled laborers furnished by the Works Progress Administration of the federal government and certain skilled laborers and equipment contributed by the defendant city. Smith and Riddle were among the group of laborers furnished by the Works Progress Administration.

When the cause came on for trial the

defendant moved that it be continued, but the court overruled said motion and proceeded with the trial. At the close of the plaintiff's evidence, the court overruled the defendant's demurrer to same. Thereafter the defendant introduced its evidence, and when both parties had rested, requested that certain instructions be given the jury. The court did not give all of the instructions requested, but in lieu of some of them, he gave three instructions which the defendant had not requested.

The jury returned a verdict for the plaintiff in the sum of $5,000, and judgment was entered in conformity therewith.

Having perfected this appeal, the defendant first urges that the trial court erred in overruling its demurrer to the plaintiff's evidence. Since the defendant did not stand on said demurrer, but proceeded to introduce its evidence, we will not consider the sufficiency of the plaintiff's evidence alone. See Stagner v. Files, 182 Okla. 475, 78 P. 2d 418.

The defendant further contends that the trial court erred in giving instructions numbered 4, 15, and 16, and refusing to give its requested instructions numbered 1 and 4. Under the instructions complained of, the jury was told that they might return a verdict for the plaintiff even though they found that the wire which caused plaintiff's fall was placed in position and left there by W. P. A. workers, if they also found that by reason thereof the street upon which the plaintiff fell was not in a reasonably safe condition for travel.

The defendant contends that it is not liable upon this theory unless it had notice of said condition, and that therefore the court committed error in refusing to give its requested instruction No. 4, which presented to the jury the question of notice. The defendant further maintains that the court committed error in refusing to direct a verdict for the defendant as requested in its requested instruction No. 1, for any one or all of the following asserted reasons: (1) The record reveals that the defendant had no notice that the wire was left across the street; (2) the position of the wire did not create such a dangerous condition in the street as could reasonably be anticipated to cause damage; and, (3) it was placed and left there, not by its servants, agents, or employees, but by employees of the W. P. A., or Works Progress Administration.

Counsel for the defense cite language used in the decisions of cases in other jurisdictions to the effect that laborers furnished by federal relief agencies like the W. P. A. for a project similar to the one here involved are not employees of the city or local political entity for whose benefit the project is being performed. Under one of the theories adopted by the plaintiff, however, and submitted to the jury by the court's instructions numbered 15 and 16, it is immaterial whether the W. P. A. workers who created the condition from which the plaintiff's injuries resulted were employees of the defendant city or not. According to this theory, a city is bound to keep its streets reasonably safe for travel and it is liable for its failure to do so, even though the unsafe condition was created or caused by persons other than servants and employees of the municipality. This doctrine seems to be the generally accepted view. See 43 C. J. 901, par. 1775; Dillon, Municipal Corporations (5th Ed.) vol. 14, p. 2991, par. 1708; McQuillin, Municipal Corporations (2d Ed.) p. 207, sec. 2985. The following decisions of this court in effect conform to that view: City of Purcell v. Stubblefield, 41 Okla. 562, 139 P. 290, 51 L. R. A. (N. S.) 1077; City of Tulsa v. Wells, 79 Okla. 39, 191 P. 186; City of Chickasha v. Daniels, 123 Okla. 73, 251 P. 978, 51 A. L. R. 568; City of Shawnee v. Sears, 39 Okla. 789, 137 P. 107, 50 L. R. A. (N. S.) 885. However, the city's liability does not extend to defects or obstructions rendering its streets unsafe unless it can be said to have had notice of same, or as stated in Armstrong v. City of Tulsa, 102 Okla. 49, 226 P. 560, "unless the facts and circumstances are

such as to warrant an inference of notice or knowledge. * * *" Counsel for the defendant contend that this condition to the operation of the rule exists to defeat liability in the present case because it was not shown that the defendant had notice that the W. P. A. workers had left the wire in question extending across the street. In support of this contention they call our particular attention to the testimony of the witness Henry Bayes, who was the street commissioner of the defendant city during the performance of the W. P. A. project in question. Bayes admitted that he was at the scene of the accident frequently during the performance of the project, that he was there to see that the workers "got the road up to grade, according to Hoyle" or "according to specifications," but according to his testimony the wire either was not across the street when he left there about the time the work ceased on the day of the accident, or if it was, he did not see it. Counsel for the plaintiff contend that Bayes' testimony to the effect that he did not know the wire was left as it was by the W. P. A. workers is ineffective to warrant disturbing the jury's verdict, for, under the correct principles of law applicable, it is immaterial whether Bayes was actually aware of that fact or not. In support of this view counsel cite the rule enunciated in City of Hugo v. Nance, 39 Okla. 640, 135 P. 346, as follows:

"If a municipal corporation rightfully causes an improvement to be constructed or other work to be done, whether by an independent contractor or otherwise, it is bound to take notice of the character of the work, and its condition, whether safe or dangerous, and is bound to take notice of the condition, whether safe or dangerous, of its streets and grounds as affected by the prosecution or performance of such improvement."

In the body of the opinion in the above case, it is demonstrated that the responsibility of a municipality for construction or repair work which it has authorized another to do upon its streets and sidewalks comes within the exception which exists to the general rule of a party's nonliability for the negligence of his contractor in a case where said party is under a primary obligation to keep the subject matter of the work in a safe condition. The conclusion announced in the above opinion seems to be well supported by the authorities cited therein as well as by some of the more recent cases. Thus, in Park v. Board, 3 Ind. App. 536, 30 N. E. 147, it was said:

"It is clear from the authorities cited that the obligation of a town or city to keep its streets in a safe condition for the passage of persons and property is a primary one, and the municipality cannot divest itself of this duty. It is also well settled by the greater weight of authority that because of this duty to the public a city or town, when having work done upon its streets or bridges, although by a contractor, *is bound to see* that such precautions are used while the work is in progress as are reasonably necessary to protect travel. *No matter what kind of contract the city may make, nor with whom,* it still remains charged with the care and control of the street in which the improvement, change, or repair is being made, and it cannot throw off its duty and the responsibilities through which that duty is to be enforced." (Italics ours.)

In Lewis v. Kansas City (Mo. App.) 122 S. W. 2d 852, the court held:

"The rule that a municipality must have notice of an obstruction to a public street or park caused by a third party in time to abate the obstruction before the city is liable for any injury caused thereby does not apply where such third party has contractual connections with the city or is acting under city's authorization, or as its agent."

See, also, Lau v. City of Chicago, 153 Ill. App. 50; Mehan v. City of St. Louis (Mo.) 116 S. W. 514; Lasityr v. City of Olympia (Wash.) 112 P. 752; Schlinski v. City of St. Joseph (Mo. App.) 156 S. W. 823.

We find nothing in the facts of the present case that would warrant the application of a rule substantially different from the one followed in the cases cited above. No matter whether the Works Progress Administration be denominated an independent contractor or not, with reference to the project being performed

upon the defendant city's streets at the time of plaintiff's injury, all of the evidence indicates that said project was undertaken with the authorization and approval of the defendant. Whether it be said that the rule requiring notice does not apply to a situation where the municipality has authorized or caused the work to be done by a third party or whether it be said that the authorization warrants an inference of notice to the municipality of the condition of the street that is brought about by said work, the result is the same—the municipality is liable. Under the foregoing principles, we think it is immaterial in the present case that the wire causing the injury was placed on the street and left there by W. P. A. workers and that the defendant city may not have had actual notice of this fact. We therefore conclude that neither circumstance c o n s t i t u t e s sufficient ground for sustaining the defendant's allegations of error in the trial court's instruction of the jury.

A further proposition asserted in support of the defendant's specifications of error is that the condition, defect, or obstruction in the street created by the wire traversing it was not such that damage could be reasonably anticipated therefrom. In connection with this proposition, we are cited to the cases of City of Tulsa v. Frye, 165 Okla. 302, 25 P. 2d 1080; Bristow v. Pinkley, 158 Okla. 104, 12 P. 2d 229; City of Ada v. Burrow, 171 Okla. 142, 42 P. 2d 111; Oklahoma City v. Banks, 175 Okla. 569, 53 P. 2d 1120, and Short v. Oklahoma City, 177 Okla. 202, 58 P. 2d 334. The doctrine upon which such decisions are based is that a municipality is not liable for every defect or obstruction in its sidewalks or streets, however slight or trivial, and the substance of the rule which proceeds therefrom is that if the defect or obstruction is so slight or trivial that no careful or prudent person would reasonably anticipate any danger from its existence, the question of the municipality's responsibility for an accident caused thereby is one of law and should be determined in favor of said municipality by the court. Counsel for defendant maintain that the obstruction alleged to have been created by the wire in the present case is as slight as any of the alleged defects or obstructions that in the decisions cited were held nonactionable, while counsel for the plaintiff say that it is not. Because of the difference in the nature of the defects described in those cases and the alleged obstruction herein complained of, there is very little if any room for the drawing of comparisons between the former and the latter. In the Frye Case, the alleged defect was a "crevice, hole or opening" about one inch wide between a concrete sidewalk and the curb. In the Pinkley Case, the alleged cause of plaintiff's injury was a depression in the pavement "at most only one or one and one-half inches deep." The alleged defect in the Burrow Case was a "slope or drop of five inches, * * * and extending the entire width of said sidewalk at said point. * * *" In the Banks Case, the alleged cause of the plaintiff's injury was a loose brick or bricks in a sidewalk. The defect complained of in the Short Case was a crack about two inches wide extending across a sidewalk. It will readily be seen that the potentialities of the sidewalk and pavement imperfections involved in the above cases as instrumentalities of danger are quite different from those of the alleged cause of the accident in the present case. The evidence indicates that there is no sidewalk on Smith avenue in the block in which the plaintiff approached its intersection with Ninth street, and that said portion of Smith avenue is bounded on one side by a ditch and high weeds, and on the other by the M., K. & T. Railroad right of way. Under these circumstances and the evidence of its previous use by pedestrians, we think that it could reasonably be assumed or anticipated that some pedestrian might be walking upon said vehicular roadway during the night in question. The evidence further shows that the accident occurred almost an hour after sundown, and in the absence of evidence to the contrary, the jury might have reasonably assumed or inferred that the scene of said accident

was engulfed in complete or semi-darkness.

The defense counsel's assertion that the obstruction created by the wire was so slight as to defeat the plaintiff's recovery seems to be based in a measure upon the assumption that said wire was lying flat upon the roadway. On the other hand, our attention is called to the testimony of the witnesses Harmon Cunningham and Charley Kaywood in support of the allegation in plaintiff's petition that said wire was suspended approximately four inches above the surface of Smith street when the accident occurred. According to Cunningham's testimony, that was the height of the wire above the street when he drove down said street in his car about 2:30 p. m. the same day that the accident occurred. In view of the testimony that the wire was still there when the plaintiff stumbled upon it, and in the absence of proof that its position was changed from 2:30 p. m. until it was removed the jury might have reasonably inferred that the wire remained four inches above the surface of the street when the plaintiff stumbled upon it about 7:30 or 8 o'clock that evening even though there was disputed testimony to the effect that the wire was removed about 4 o'clock p. m. when the work on the street ceased until the following day. Such an inference also finds support in the undisputed fact that the wire was tied to a stake on one side of the street and on the other side of said street it crossed the top of a dirt bank which, according to the witness Charley Kaywood stood "three or four or five inches" above the roadway. Since in considering the defendant's motion for a directed verdict, the inferences most favorable to the plaintiff that m i g h t be reasonably drawn from the competent evidence were entitled to consideration, we cannot say that the trial court erred in refusing to direct a verdict for the defendant in the present case. In our opinion a piece of telephone wire suspended across a city street four inches above the surface of said street and left there at night as was the one in the present case is an obstruction of such character that

careful and prudent men might reasonably differ as to whether it amounts to a danger or menace to the traveling public. Therefore, the trial court's submission of this question to the jury was not an error. City of Okmulgee v. Bridges, 185 Okla. 537, 94 P. 2d 927.

The defendant next urges that the trial court erred in overruling its motion for a continuance. The reason said continuance was requested, as alleged in said motion, was the defendant's inability to obtain before the day of trial the deposition of one William French, who was alleged to be a material witness for the defendant. The court's error in overruling this motion is predicated upon the assertion that French would have testified that on December 12, 1935, while working as a member of said witness' section crew on the M., K. & T. Railroad, the plaintiff sustained an accidental injury to his back and side which compelled him "to lay off from work until about the 1st of May, 1936"; and that from the time of said injury until he left said employment on June 9, 1936, said plaintiff frequently complained of pain in his back and was unable to do the heavy work he had formerly done. Counsel for the plaintiff maintain that had French's deposition been taken it would have been merely cumulative and corroborative of other evidence that the defendant introduced. From our examination of the record this assertion appears to be true. We find substantially the same facts to which French allegedly would have testified established by the plaintiff, himself, and the testimony and depositions of other witnesses. Consequently, under the rule stated in Oil Reclaiming Co. v. Reagin, 169 Okla. 505, 537 P. 2d 289, we hold that the trial court did not abuse its discretion in overruling the defendant's motion for a continuance.

The last proposition urged by the defendant is that "the verdict of the jury was excessive and clearly shows to have been rendered under the influence of passion or prejudice. * * *" At the trial, the plaintiff introduced the testimony of two doctors, and the defendant intro-

duced the testimony of one. All had examined the plaintiff and all agreed that he was suffering from progressive hypertrophic arthritis from which he would never recover, but was and would be permanently disabled. The two doctors who testified on behalf of the plaintiff stated that he received a contusion or concussion of the brain, as well as injuries to his back from his fall over the wire. Though they concurred in the opinion of the physician who testified on behalf of the defendant that plaintiff had arthritis before said fall, they stated that the injuries thereby suffered caused said malady to become progressive or active, whereas it had been inactive or dormant before. The defendant's medical witness admitted that the plaintiff's previous arthritis had probably not incapacitated him in doing his work, and that it was aggravated to the extent of causing disability by the injuries in question.

In further support of the last proposition counsel for defendant call our attention to evidence indicating that when the plaintiff resumed his work for the M., K. & T. Railroad Company in May, 1936, after the injury he had previously suffered, he was not as physically able to perform said work as he had been before said injury. This evidence is rendered ineffective in the present controversy by an abundance of other evidence establishing that between that time and the accident involved herein the plaintiff had regained his capacity to do manual labor.

To further demonstrate the excessiveness of the verdict and judgment, reference is made to evidence showing that for a period before the injuries in question the plaintiff had no continuous employment, but was engaged only in odd jobs and that he has been able to perform such jobs since said injuries. In our opinion, such evidence is insufficient to establish that the judgment is excessive. The plaintiff is entitled to be compensated for his pain and suffering as well as for being deprived of the ability he possessed before the accident to perform heavy manual labor. In addition to these elements of damages, there was consid-

erable medical expense which the plaintiff was proven to have incurred over a long period of treatment. While it is true that at the time of the accident the plaintiff was not engaged in regular and continuous employment, there was sufficient evidence from which his earning capacity could be estimated. He had earned $2.70 per day while working for the M., K. & T. Railroad Company, and he testified that since then and before the accident he had earned from $1.50 to $2.50 per day and was employed "most all the time" though he admitted that part of his work consisted of repairing and improving his own premises. In view of this testimony and other evidence to the effect that the plaintiff has been physically unable to earn anything since the accident, it cannot be said that the plaintiff has not been damaged substantially. Considering that he has been deprived of the only means with which he is apparently fitted to earn a livelihood, and considering his age and his life expectancy and the different elements of damages proved, we are of the opinion that the judgment of $5,000 is not excessive.

The judgment of the trial court is affirmed.

BAYLESS, C. J., and RILEY, OSBORN, and DANNER, JJ., concur.