CITY OF TULSA v. ROBERTS.

No. 29434. May 1, 1940.

Rehearing Denied July 2, 1940.

Supplemental Opinion Oct. 22, 1940.

Second Petition for Rehearing Denied Dec. 10, 1940.

*107 P. 2d 1006.*

H. O. Bland, Milton W. Hardy, and E. M. Gallaher, all of Tulsa, for plaintiff in error.

B. A. Hamilton and S. J. Clendinning, both of Tulsa, for defendant in error.

WELCH, V. C. J. This is an appeal from a verdict and judgment rendered in the district court of Tulsa county, Okla., against the city of Tulsa, for injuries sustained by plaintiff by reason of a fall occasioned when plaintiff stepped from curb level to street level near or directly over a catch basin or street drain, which had been constructed near the street intersection. A part of said drain extended over into the pedestrian cross-way marked off by the city, but that part of the drain was immediately behind a large signal light post. The distance from the curb level to street level at this exact point was 14 inches.

The question presented here for our determination is whether the trial court committed error in overruling defendant's motion for directed verdict.

A city has two classes of powers—the one legislative, public, governmental, in the exercise of which it is a sovereignty and governs its people; the other proprietory, corporate, or quasi-private, conferred upon it, not for the purpose of governing its people, but for the private advantage of the inhabitants of the city and of the city itself as a legal personality.

We have heretofore held that a city is not liable for negligence of employees in cleaning streets and sewers, since the same is the discharge of a governmental function. Spaur et ux. v. City of Pawhuska, 172 Okla. 285, 43 P. 2d 408.

A catch basin or street drain is constructed for the purpose of draining the streets and thereby help in keeping them in a sanitary condition. This court has heretofore followed the general rule that in such construction the city has discretion and latitude in determining and fixing grades and elevations, and drainage depressions, and that the city is not liable as negligent, unless the plan or method of construction is palpably unsafe or creates a manifest danger resulting from a type of construction which all men of reasonable prudence and intelligence would agree was unjustified and unsound planning. See Lewis v. Tulsa, 179 Okla. 176, 64 P. 2d 675; Oklahoma City v. Cantrell, 181 Okla. 56, 72 P. 2d 381; City of Ada v. Burrow, 171 Okla. 142, 42 P. 2d 111.

In the Lewis Case, supra, the perpendicular drop was about the same as here. In the Cantrell Case, supra, we held that in such a case, where only one inference could be drawn from the evidence concerning whether city was negligent, the question of negligence became one of law for the court.

We regard those cases as decisive of the question, demonstrating that the trial court erred in overruling defendant's motion for a directed verdict.

The judgment is therefore reversed.

BAYLESS, C. J., and OSBORN, HURST, and DANNER, JJ., concur. RILEY and DAVISON, JJ., dissent. CORN and GIBSON, JJ., absent.

DAVISON, J. (dissenting). I am unable to agree with the conclusion announced by a majority of my associates in this case, and deem the matter of sufficient importance to warrant an analysis of the case in a dissenting opinion.

In this state the maintenance of streets is a proprietary function of government, and the failure of a municipality to properly perform its duties in connection therewith may constitute the basis of civil liability.

There are, however, two rules recognized by this court, each of which, when applicable, operates to excuse the municipality from liability.

The one is sometimes known as the "trivial defect" rule, and was first specifically recognized in this jurisdiction in City of Tulsa v. Frye, 165 Okla. 302, 25 P. 2d 1080. The other is sometimes referred to as the "adopted plan" rule, and excuses defects inherent in a plan of construction adopted by a city. Its application is exemplified by Lewis v. City of Tulsa, 179 Okla. 176, 64 P. 2d 675.

The majority opinion bases the case upon the latter rule, although there is some language in the first paragraph of the syllabus which indicates that the "trivial defect" rule may also have claimed a degree of consideration.

It is my purpose in this dissent to demonstrate that neither of the foregoing rules operates to discharge the city from liability.

The adopted plan theory has no application because no plan was shown to have been adopted and the defect was too great to be excused on the theory that it constituted a trivial defect.

A more detailed analysis of the facts will be helpful, and is therefore incorporated in this dissent.

The defendant city does not question that plaintiff's injuries were of sufficient magnitude to justify the damages awarded, thus eliminating the necessity of a detailed discussion of the nature and extent of such injuries in this opinion.

Plaintiff's injury was sustained on the 1st day of March, 1936, at the intersection of First and Main streets in the city of Tulsa. Main street extends from north to south, and First street from east to west. Traffic is controlled at the intersection by means of mechanically operated lights denoting the direction which traffic may move. On the day in question, at about 3 o'clock in the afternoon, plaintiff was standing on the curb on the east side of Main street immediately south of the street intersection at the point used by pedestrians in crossing Main street from east to west. He was waiting for the light to change. The light changed. He stepped from the curb, fell, and injured himself. Immediately under and adjacent to the curb where he was standing the city had constructed a sloping street catch basin and surface drain to prevent the escape of surface drainage into the storm sewer system. The grate of the drain and the portion of the catch basin immediately adjacent thereto was 14 inches below the level of the top of the curb. The north edge of the grate of the drain corres- ponded with the property line fronting First street, thus a projection of the sidewalk line would coincide with the edge of the drain. The catch basin projected northward 42 inches, or three and one-half feet, into the normal line of foot traffic sloping rather abruptly upward. It sloped upward in the 42 inches a distance of 10½ inches, thus causing the drop of the step from the curb onto the street to vary from 3½ inches to 14 inches in the north 42 inches of the portion of the street used by pedestrians for crossing. The plaintiff stepped into the catch basin near the grate.

"The defect as above described is graphically illustrated by a picture appearing at page 93 of the record."

At this point it may be mentioned that the city had caused white lines to be drawn, indicating or limiting the portion of the street to be used by pedestrians. It had not, however, by such lines attempted to route traffic away from the drain and catch basin, but on the contrary had by means thereof widened the portion of the street to be used by pedestrians, the white line being south of the imaginary line created by projecting the property line. The white line bisected the drain grate. Although the existence of the white line was referred to in the plaintiff's pleading, in the evidence, and in the court's instructions, no specific legal question was raised by the parties in the trial court in connection therewith, nor does the same constitute the basis of a legal issue in this court, although loose allusions are made in the briefs to its existence.

Since it might well be urged that the white line was used by the city as a means of directing traffic (a strictly governmental function), it might be contended that civil liability could not be predicated on an alleged improper use thereof, if such question were properly presented by the record in this case and the parties to this appeal. Kirk et al. v. City of Muskogee, 183 Okla. 536, 83 P. 2d 594. However, since the city did not attempt to use the white line as

a means of directing traffic around the allegedly dangerous portion of the crossing, the use thereof cannot be claimed as a defense, and since the city does not contend it was improperly injected into the case as a factor to determine liability, the necessity of discussing the point is eliminated.

The plaintiff in this case slipped into that portion of the catch basin which projected into the portion of the street normally used as a crossing independent of extended width thereof indicated or created by the white line.

Thus the right of the plaintiff to recover is based upon the theory that the city created and maintained a dangerous condition on its street by constructing the catch basin at such a point as to traverse in part the portion of the street used by pedestrians, creating an unusual and deceptive drop at the point in the street previously described, in violation of its duty to use reasonable and ordinary care to maintain its streets in a reasonably safe condition for the use of the traveling public. City of Sapulpa v. Williams, 121 Okla. 176, 249 P. 152; Town of Canton, Blaine County, v. Mansfield, 108 Okla. 60, 233 P. 1071; City of Ada v. Burrow, 171 Okla. 142, 42 P. 2d 111.

The city seeks to avoid liability on the theory that the alleged acts of negligence are identified with the performance of a governmental as distinguished from a proprietary function of government, and that it is therefore immune from civil responsibility for the injuries sustained by the plaintiff.

As we have previously noted, it is well recognized in law that a city exercises two classes of powers, one of which is described as governmental, the other as proprietary or corporate. In the performance of a strictly governmental function a city enjoys immunity from civil liability, but in the accomplishment of an act identified with its corporate functions its responsibility is determined by the tests which are applied to private individuals or corporations. Oklahoma City v. Baldwin, 133 Okla. 289, 272 P. 453; City of Shawnee v. Roush, 101 Okla. 60, 223 P. 354; Oklahoma City v. Foster, 118 Okla. 120, 247 P. 80.

While general principles obtain which serve to differentiate between the two functions performed by a municipality, no definite test has been formulated, and when doubts arise, the nature of the act is generally determined by resort to stare decisis. In this jurisdiction the maintenance of both streets and sewers, as distinguished from the cleaning thereof for sanitary purposes, has been classified as proprietary. Spaur et ux. v. City of Pawhuska, 172 Okla. 285, 43 P. 2d 408, and authorities therein reviewed. Thus the fact that a dangerous condition of a street is connected with the maintenance of a sewer system does not in itself absolve a city from liability. City of Ada v. Smith, 73 Okla. 280, 175 P. 924; City of Tulsa v. Whittenhall, 140 Okla. 160, 282 P. 322; Oklahoma City v. Hayden, 169 Okla. 502, 37 P. 2d 642. It is likewise settled by the previous decisions of this court that a precipitous and dangerous step in the portion of the street used by pedestrians may constitute the basis of civil liability (City of Kingfisher v. Williams, 133 Okla. 260, 272 P. 363) unless the step was created pursuant to and in accordance with a plan adopted by the city through its officers authorized to act in its behalf in a legislative or judicial capacity and to exercise discretion in the adoption of such plan, in which event the alleged defect inherent in the plan cannot be made the basis of recovery unless such defect creates a condition "so palpably and manifestly unsafe that no prudent man would approve its continued existence." Lewis v. City of Tulsa, 179 Okla. 176, 64 P. 2d 675.

It is urged by the city and held in the majority opinion that the present case is governed by the principles enumerated and applied in the Lewis Case, supra. In an effort to render the doctrine of that case available as a defense herein, the city produced as a witness a former city engineer, who testified in substance that in 1908, while he was

city engineer, a catch basin and drain was established on the corner involved in this action. On further inquiry he revealed that the catch basin as it now exists was not the one that he placed near that corner in 1908.

Thus (if it be considered that the testimony of the engineer established that the catch basin as constructed in 1908 was pursuant to a plan adopted in the exercise of discretion by the officer or officers of the city of Tulsa authorized to exercise such discretion) the proof that the catch basin was changed subsequent thereto without proof that the change was also pursuant to an adopted plan (which proof was not tendered) removes this case from the operation of the rule of Lewis v. City of Tulsa, supra. In other words, it is not made to appear that the catch basin as it now exists is the result of an adopted plan.

The circumstances and conditions under which liability may be denied upon invocation of the rule approved by this court in Lewis v. City of Tulsa, supra, seem to be misapprehended in this case.

It was admitted in the petition in that case that the defect in sidewalk construction was the result of a plan adopted by the city, and the question of who could act for the city in the matter of adopting such plan was not directly presented; nevertheless, in discussing the basis for immunity, we clearly recognized that the alleged defect inherent in the plan must be the result of the exercise of discretion on the part of the officials authorized to act legislatively or judicially for the city in such matters. We therein said:

"The adoption of a plan for public improvements is a governmental function. By some authorities it is classified as legislative. Dillon on Mun. Corp. (5th Ed.) vol. 3, § 1142. By others it is said to be judicial. McQuillin on Mun. Corp., vol. 5, § 2804, p. 792. Regardless of whether the act adopting the plan should be classified as legislative or judicial, the authorities are in general accord that municipalities are not liable for errors in judgment in the plan adopted."

And quoting with approval from Teager v. Flemingsburg (Ky.) 60 S. W. 718, it was said:

" 'But we rather incline to the view that, while the city governing body may exercise its discretion in the selection of a plan of street improvement, if the plan adopted is one palpably unsafe to travelers, the city would be liable. But when the plan is one that many prudent men might approve; or where it would be so doubtful upon the facts whether the street as planned or ordered by the city governing board was dangerous or unsafe or not—that different minds might entertain different opinions with respect thereto,—the benefit of the doubt should be given the city, and it should not be held liable.' "

And at another point we observed:

"The ministerial officers of a city are not charged with the responsibility of exercising a superior legislative or judicial judgment and correcting errors of judgment made by the governing body in the adoption of a plan for public improvements."

Thus, throughout our opinion, we made it clear that the basis for immunity from liability was the action of the governing body in adopting the plan.

The rule approved by the court in the Lewis Case is stated in the annotation appearing in 90 A. L. R. 1502, at page 1504, and numerous cases approving its application are cited in support thereof. At page 1525 of the annotation, the annotator observes:

"The states permitting a municipality to shield itself from the result of its act on the ground that it was caused by a defect of plan are inclined to hold that the plan must have been formally adopted by the council, and not merely acted upon by employees.

"In order that the city should be protected because the council had adopted the plan, it is necessary that the board should have had the exact matter under consideration, and, after due deliberation, have expressly ordered the thing to be done."

The correctness of the statement is demonstrated by the cases cited in sup-

port thereof. Thus in Gould v. City of Topeka (Kan.) 4 P. 822, at page 827, the Kansas Supreme Court, speaking through Mr. Justice Valentine, said:

"We would further think that, in order that the city should be protected from liability on account of the work being executed in accordance with a plan previously adopted by the city, the plan should be shown to have been expressly adopted, and adopted by the city council or other board having the control of the political, the legislative, and the governmental affairs of the city. To say that it has been adopted because the board has given no expression to the contrary would not do. In order that the city should be protected from liability, it is necessary that its board should have the exact matter under consideration, and, after due deliberation, should expressly order that the thing be done; or, if the thing has already been done, then that it should be ratified."

And in Stern v. International R. Co., 220 N. Y. 284, 115 N. E. 759, 2 A. L. R. 487, Justice Cardoza, speaking for the New York Court, said:

"The defendants refer to cases in which a city planning an improvement has been held to be exonerated for errors of judgment in the plan (citations omitted). A distinction has been drawn between affirmative approval, which will evidence a true exercise of discretion, and passive acquiescence, which may be merely a negligent omission to remedy an evil. The decision in Urquhart v. Ogdensburgh, on its second hearing in this court, illustrates the distinction (97 N. Y. 238)."

Consider, also, Ford v. Des Moines (1898) 106 Iowa, 94, 75 N. W. 630; Brown v. Syracuse (1894) 77 Hun, 411, 28 N. Y. Supp. 792; Collett v. New York (1900) 51 App. Div. 394, 64 N. Y. Supp. 693; and Clark v. Chicago (1868, C. C.) 4 Bliss. 486, Fed. Cas. No. 2,817; White v. Trinidad (1897) 10 Colo. App. 327, 52 P. 214.

I conclude that in order for an alleged defect in a street to be excused on the theory that it was inherent in an adopted plan, it must appear that the plan incorporating the condition constituting the alleged defect was considered and approved by the city counsel, or other officer, authorized to exercise governmental power and discretion of a legislative character.

The testimony of the former engineer, showing only that a catch basin was constructed on the corner there involved in 1908, and showing further that the catch basin has since been changed, but wholly failing to show that the catch basin as it now exists was included in a plan adopted by the officers of the city authorized to exercise discretion in such matters, is insufficient to meet the foregoing requirement, and the contention of the city on this point should be denied.

Reliance is also placed upon the "trivial defect rule" as announced. by this court in City of Tulsa v. Frye, supra (and applied in Oklahoma City v. Cantrell, 181 Okla. 56, 72 P. 2d 381). The rule was stated in paragraph 3 of the syllabus, as follows:

"When a defect in a sidewalk is so slight that no careful or prudent person would reasonably anticipate any danger from its existence, but still an accident happens which could have been guarded against by the exercise of extraordinary care and foresight, the question of defendant's responsibility is one of law."

In the Cantrell Case it was applied to excuse liability for a dip in the street. Of course, if a defect is of sufficient magnitude to provoke a disagreement between reasonable men, a question of fact for the jury is presented. City of Okmulgee v. Bridges, 185 Okla. 537, 94 P. 2d 927; City of Wagoner v. Black, 186 Okla. 207, 97 P. 2d 21. The magnitude of a defect in a street or sidewalk which may be excused as a matter of law upon application of the rule of the Frye Case, supra, is illustrated by a number of cases from this jurisdiction. City of Ada v. Burrow, 171 Okla. 142, 42 P. 2d 111; Smith v. City of Tulsa, 172 Okla. 515, 45 P. 2d 689; Ponca City v. Swayne, 174 Okla. 576, 50 P. 2d 1082; Oklahoma City v. Banks, 175 Okla. 569,

53 P. 2d 1120; City of Norman v. Lewis, 180 Okla. 344, 69 P. 2d 377. See, also, cases collected in annotation appearing in 119 A. L. R. 161.

An examination of the foregoing cases will disclose that in no instance was a defect of the magnitude here presented ever classified as a "trivial defect."

For instance, the Cantrell Case did not involve an abrupt and precipitous drop and somewhat deceptive condition such as is here presented. It is impossible to say as a matter of law that the condition herein involved and above described is insufficient to constitute primary negligence under the "trivial defect" rule, and there is no judicial precedent for so holding. In this connection it is well to mention that the "trivial defect" rule was not the basis of our decision in Lewis v. City of Tulsa, supra. The two rules are entirely independent of each other. The difference in the basis of the two rules is so obvious that further discussion thereof is unnecessary.

In presenting its defense, the defendant introduced evidence tending to show the necessity of a drain and catch basin on the corner where the catch basin herein was located. A careful analysis of such evidence reveals that it does not justify locating the drain in such a manner that it traversed the portion of the streets used by pedestrians and created a deceptive and precipitous drop there.

In my opinion the trial court did not err in submitting the case to the jury. No substantial error having been presented herein, the judgment of the trial court should be affirmed.

I therefore respectfully dissent.

---

### Supplemental Opinion.

It has been called to the attention of this court by proper motion filed that the defendant in error, Fred E. Roberts, died on or about the 25th day of May, 1940. The briefs were all filed and the case submitted prior to that date. Plaintiff in error requests that the opinion filed herein on June 11, 1940, be withdrawn and refiled as of May 1, 1940. Under the rule announced by this court in Spencer v. Hamilton, 156 Okla. 194, 13 P. 2d 81; House v. Gragg, 170 Okla. 550, 44 P. 2d 832; Lutner v. Shoffner, 181 Okla. 271, 73 P. 2d 1140, in such case the opinion will be withdrawn and refiled as of a date prior to the death of the defendant in error.

It is therefore directed that the opinion be withdrawn and refiled as of May 1, 1940.