BUTLER v. CIVIC GAS CO. et al.

No. 32254.   Sept. 23, 1947.

Rehearing Denied Jan. 20, 1948.

*188 P. 2d 843.*

598

Charles B. Tucker, of McAlester, A. R. Telle, of Atoka, and Utterback & Utterback, of Durant, for plaintiff in error.

C. B. Meraminger, of Atoka, and M. D. Green and John E. M. Taylor, both of Oklahoma City, for defendant in error, City of Atoka.

Counts & Jones and H. I. Aston, all of McAlester, for defendants in error Civic Gas Company, S. J. Campbell, Gas Service Corporation, and Southeastern Gas Company.

RILEY, J. This action was commenced by plaintiff, Clara Butler, against Civic Gas Company, the city of Atoka, S. J. Campbell, the Gas Service Corporation, and Southeastern Gas Company to recover damages for the destruction by fire of her residence and contents thereof, in the city of Atoka.

The trial court sustained demurrers of the several defendants to plaintiff's evidence, and directed a verdict for defendants.

The defendants, other than the city of Atoka, are sued as owners or parties interested in the gas system serving the city. The negligence charged against them is that their gas line in the city street at the intersection of Ohio avenue and B street was buried to a depth of less than 18 inches at the time it was installed, in violation of requirements of the franchise granted by the city. The negligence charged against the city is that having knowledge that the gas line or pipe was not buried the required depth, it permitted, or caused, one of its employees to plow into and break the gas line, by which the gas pressure in the pipe running into plaintiff's residence was regulated, causing the pressure and volume of gas in the line to be suddenly increased, resulting in the fire which destroyed plaintiff's property.

This is not a question of pleading, but the sole question is whether the evidence was sufficient to require the submission of the issues as joined, to the jury. The parties brief the case

on the theory that if the pipe was not buried to the depth required by the franchise, the Civic Gas Company was guilty of negligence.

The uncontroverted facts are that in the spring of 1939 the city of Atoka granted a franchise to defendant Civic Gas Company, which, among other things, required the Gas Company to lay all its gas lines 18 inches below established grade of the streets, avenues, and alleys as then or thereafter established. Later in that year gas lines to serve the citizens with gas were laid throughout the city, including Ohio avenue, and gas was furnished under the franchise.

In 1941 the Works Progress Administration (WPA) approved an application made by the city for a street improvement project including the paving of Ohio avenue. On April 3, 1941, while one of the employees of the city was working under the supervision of a WPA foreman or subforeman, he plowed into and broke the gas pipe line of the Gas Company, which controlled the gas pressure in the service lines leading to the consumers. This greatly increased the pressure and flow of gas in the service line and caused numerous fires, among them the one which damaged plaintiff's property.

Ohio avenue runs north and south and B street runs from west to east into Ohio avenue, terminating there. The place at which the pilot line was broken was on the west side of Ohio avenue, about 8 feet east of the west side of said street and about the center of B street extended into the intersection.

The break occurred while Ohio avenue was being prepared for paving under the WPA project. The man who broke the line was operating a motor grader to which was attached a scarifier, an implement with plow-like teeth which extend 6 or 7 inches below the blade of the grader, and was being used to plow up or loosen the earth so that the same could be more readily removed in excavating a subgrade for the pavement. On a second trip across the intersection where the line was located, he caught the pilot line with one of the teeth on the scarifier and broke it. The pilot line was ½ inch pipe. It was located alongside of or about 3 inches above the main gas line, the evidence being in conflict on the point.

The plaintiff produced no witness who testified directly that when the gas system was installed in 1939 the pipe at the intersection of Ohio avenue and B street was not buried the full 18 inches below the surface as prescribed by the franchise. Two witnesses produced by plaintiff, one of them being the operator of the grader, testified that from their investigation, observations, and measurements made immediately after the line was broken, the pipe line at that place was only 6 or 7 inches below the surface of the street and that the pilot line was about 3 inches above the main line.

One of these witnesses, F. E. Flowers, testified that he was in the city street department in 1939 when the gas lines were laid; that he had no knowledge of the depth to which the gas line had been buried when laid at that particular intersection, but he did not think all the gas lines were buried 18 inches. He testified that Ohio avenue at the intersection of B street sloped some and that the water ran across the street; that it had been graveled at the place where the line was broken; that Ohio avenue had been dragged and run over with a grader frequently during the period of time between the laying of the line and the time it was broken; that he was over it every day and imagined the grade or level of Ohio avenue at the intersection of B street remained approximately the same.

W. H. Smith, the man who operated the grader with the scarifier attached, testified that he was operating the scarifier which broke the pilot line, under the direction of the WPA subforeman;

that he entered that part of the intersection where the gas line was located, under protest, and advised the WPA foreman that the gas line was there and that he was afraid the scarifier might interfere with the line, but the WPA foreman, or subforeman, specifically directed him to go ahead with the work, which he did; that the first time he ran the scarifier over the line the teeth went into the ground to a depth of 4 or 5 inches; that on the second trip he did not know how deeply they went because of the loose dirt, but he did not think they went as deeply as on the first trip, but it was on the second trip that the scarifier struck and broke the gas line.

At the close of plaintiff's evidence in chief, the defendants severally demurred. The court did not at that time rule on the demurrers, but stated "I will pass on the demurrers at the close of the evidence."

Obviously, the jury, in order to find defendants, other than the city, and particularly the Civic Gas Company, guilty of negligence, could do so only by finding as a fact that the pilot line, when laid, was not placed 18 inches below the surface of the street at the place where it was broken. As stated before, there was evidence that the pilot line was not more than 6 or 7 inches below the surface of the street at the time it was broken. If it was laid 18 inches below the surface in 1939, then the grade or level of the street in the two years' time must have been lowered by wear, erosion, dragging, or grading, at least 11 inches. At the close of plaintiff's evidence, there was no competent evidence tending to prove that such a change had not taken place. The only evidence going to that question was that of the witness Flowers, who testified that he imagined the grade of Ohio avenue, at the place, had remained about the same from the time the gas line was laid until the time it was broken, that is, sometime in the spring of 1939 to April 3, 1941.

Had the trial court ruled on and sustained the defendants' demurrers to the evidence at the time they were presented, there would have been no error. Defendants did not elect to stand on their demurrers, but proceeded to put on evidence in their own behalf. Doing so, they produced a witness, C. A. Bloom, who was manager of the city of Atoka during the period from 1937 to 1941. He testified, among other things, that it was his responsibility to see that the gas lines were installed in accordance with the franchise; that he dealt with the Civic Gas Company in connection with that matter; that he was on the job most of the time and checked with the Gas Company foreman and gave him instructions to see that they complied with the regulations, and to his knowledge this was done. On cross-examination, he testified with reference to the grade of Ohio avenue at the intersection of B street; that it remained about the same from 1937 to 1941, outside of any changes by erosion and grading and that did not make much difference. He was then asked the following question: "That street was maintained at practically the same level from 1937 to the time WPA paved it?" His answer was "That is right." Again, on cross-examination, he was asked whether there was any appreciable difference in the level of the street during the time he was city manager. His answer was "No." Again, he testified:

"Q. From 1939, when the gas company laid the pipes on that street, to 1941, when the accident happened, comprising something like five years and six months, there was no appreciable raise or lowering of the street, was there? A. No. Q. It was about the same as when the pipes were laid? A. I would say it was normal, until this work, until the project was started."

Defendants produced another witness, Glenn Clark, who testified that in 1939 he was employed by S. J. Campbell, for the Civic Gas Company, to supervise the digging of the ditches for the gas lines in Atoka; that the

gas lines, and particularly at the intersection of Ohio and B street, were installed under his direction and he was quite positive that they were laid 18 inches below the surface; the reason was that he had production men working for him digging the ditches and in explaining the reason why he was sure the pipes were laid 18 inches below the surface, he was asked: " . . . What did you do, if you did do anything, to see that they were going to the depth where they, themselves, would know they were at the full depth? Do you recall anything; what did you do?" His answer was: "After I started up there on the job, I had them take a knife and cut a notch on the handles of their shovels at 18 inches, when they got even with the surface, this notch showed the way I wanted it." He then testified that the pipe was laid 18 inches deep along the entire street and intersections and that the pilot line was not above but alongside of the main line.

There were other witnesses for defendants, who testified, in substance, that the gas lines were all laid 18 inches below the surface of the street.

At the close of all the evidence, defendants renewed their demurrers to the evidence, they were all severally sustained, and judgment was entered for defendants. After unsuccessful motion for new trial, plaintiff appeals.

Plaintiff does not contend that there was error in sustaining the separate demurrers of defendants S. J. Campbell, the Gas Service Corporation, and Southeastern Gas Company. There was no competent evidence which would tend to support a verdict against any of said defendants and the judgment as to those defendants will not be disturbed.

Plaintiff contends that the court erred, first, in sustaining the demurrer, at the close of all the evidence, and in directing a judgment for defendant city of Atoka; and, second, that the court erred in sustaining the demurrer of defendant Civic Gas Company and directing a judgment for said defendant.

The charges of negligence are that the gas lines were laid by the Civic Gas Company, less than 18 inches below the surface of the street; and as to the city, the charge is that it was negligent in that its employees were well aware that the said lines had not been moved and were buried to an insufficient depth and the city was therefore negligent in ordering its employee, Bill Smith, to operate the scarifier at the time and place when the gas line was broken.

The uncontradicted evidence is that the work was being done by WPA and as to the method and manner of carrying on the work, was under the direct supervision and control of the foreman of the WPA. The scarifier was owned by the city of Atoka and Smith's wages were paid by the city, but the city was given credit for his services as against its part of the cost of construction. The evidence is that Smith was working under the exclusive direction of the WPA foreman.

Any technical employees of the city, detailed to the WPA in its prosecution of the work, became, to the extent they were employed, a part of the administration's working organization, even though paid by the city. They were as much a part of the city's contribution to the project as were the material and site. Brooks v. City of Seattle (Wash.) 74 P. 2d 1008. It is well settled that the relation of a Federal Administration Agency, such as the WPA, to a city for which public improvements are made under projects sponsored by a city and the Federal agency, is analogous to that of an independent contractor where no supervision or control of the work is had by the city. Oklahoma City v. Caple, 187 Okla. 600, 105 P. 2d 209. In this case, the city had no supervision or control over the work.

Plaintiff cites City of Wagoner v. Black, 186 Okla. 207, 97 P. 2d 21, and City of Hugo v. Nance, 39 Okla. 640, 135 P. 346, to sustain her contention that there was evidence tending to prove actionable negligence on the part of defendant city of Atoka. These two cases have no application, since they involved injuries to persons traveling the public streets and deal entirely with the duty of a municipality to keep its public streets in a reasonably safe condition for the protection of persons lawfully using the same. In this case there was no such question. Under authorities above cited, there was no error in sustaining the demurrer of defendant city of Atoka, to the evidence.

A different situation is presented with reference to the demurrer of defendant Civic Gas Company. It is well settled that a motion to direct a verdict admits all the facts and inferences to be drawn from the evidence in favor of the party against whom the motion is directed, and leaves for consideration only such evidence as is favorable to the party against whom such motion is directed. The cases following that rule are too numerous to cite, but the rule is well stated in Kansas, O. & G. Ry. Co. v. Dillon, 191 Okla. 671, 135 P. 2d 498, as follows:

"It is the duty of the trial court when ruling on motion for directed verdict, at the close of all evidence, to disregard all evidence unfavorable to the party against whom the verdict is sought, as well as incompetent evidence, and concede to be true all evidence supporting the view of the party against whom the motion is made. When this has been done, unless no recovery can be had on any view of plaintiff's evidence, the case should be left to the jury."

In Reynolds v. Brooks, 49 Okla. 188, 152 P. 411, it was held:

"Where the evidence is conflicting and a demurrer is interposed thereto, all the facts and inferences in conflict with the evidence against which the action is to be taken must be considered untrue, or withdrawn and eliminated from consideration, leaving only that which is most favorable to the party against whom the demurrer is directed, and if upon consideration thereof there appears to be sufficient evidence to support a verdict in favor of the party offering the evidence, the demurrer should be overruled."

It is also well settled that where a defendant demurs to plaintiff's evidence in chief and the demurrer is overruled, and defendant produces evidence in his own behalf upon the points upon which plaintiff's evidence is deficient and rendered insufficient to support a verdict for plaintiff, and defendant's evidence supplies such a deficiency, verdict for plaintiff will not be set aside on the ground of insufficient evidence. Sinclair Oil & Gas Co. v. Allen, 143 Okla. 290, 288 P. 981.

Where a defendant does not stand on his demurrer to plaintiff's evidence, but proceeds to introduce evidence in his own behalf, this court will not consider the sufficiency of plaintiff's evidence alone. City of Wagoner v. Black, supra; Stagner v. Files, 182 Okla. 475, 78 P. 2d 418. The evidence is uncontradicted that when and where the gas line was broken by the scarifier it was found to be not more than 6 or 7 inches below the surface of the street. We have set forth the testimony of defendants' witness Bloom that the surface of Ohio avenue remained at substantially the same level or grade from the time the gas line was laid until it was broken. He stated that as a fact, at least three times. If that be true as a fact, it could not be true that the line was originally placed 18 inches below the surface of the street.

Although the testimony of defendants' witness Clark is not urged by plaintiff, we deem it proper to consider it in connection with the ruling on the demurrer to the evidence. As stated above, Clark testified that he was superintendent for defendant Civic Gas Company in digging the ditches in which the gas lines were laid; that he was sure the lines were laid 18 inches be-

low the surface. When explaining how he was sure of that fact, he stated that he had the men engaged in digging the ditches to cut a notch on the handles of their shovels at 18 inches; that when the ditches were dug to a depth so that the notch on the shovel was level with the surface, the pipes were laid in the ditch at that depth. If this be true and the main line of 6-inch pipe was laid in the ditches at that depth and covered with 3 inches of earth, and the pilot line was laid above that, then the pilot line could not have been more than 9 inches below the surface. There was abundant evidence tending to prove that the pilot line was laid 3 inches above the main line, although Mr. Clark testified that it was laid alongside and not above the main line.

Considering the testimony of these two witnesses along with the other evidence, then the evidence together with all the inferences which could reasonably be drawn therefrom present a question of fact to be determined from the evidence, and that question was whether the pilot line was laid at the required depth in the first instance. Under the rule that in considering a demurrer to the evidence, all that part of conflicting evidence most favorable to the party presenting the demurrer must be considered as withdrawn, there was sufficient evidence to take the case to the jury on that material question of fact. It was therefore error to sustain the demurrer of defendant Civic Gas Company, to the evidence.

In view of the fact that a new trial must be granted as against defendant Civic Gas Company, there is another matter which we deem proper to discuss. It involves an apparent misconception of the evidence on the part of the trial judge. In passing upon plaintiff's motion for new trial, the trial judge stated:

"That pipe line was laying right out in the gutter where the dirt was removed, not by hand, but by heavy machinery. And when they came along a year and a half afterwards and made an examination there, could they say that the roadbed was in the same condition? If you take all of his evidence, it shows a certain fact, and that fact here was the ground was removed from over the pipe line in making the center of the street higher. And there is no dispute."

This statement cannot be justified from the record.

The evidence was that the pipe line which was broken was not in the gutter, but was laid about 8 feet from the west side of Ohio avenue. One witness testified that it was out under the main traveled part of Ohio avenue under that part which was graveled. Furthermore, the evidence was that the place where the gas line was broken was in Ohio avenue about the center of B street which comes into Ohio avenue from the west. Furthermore, the evidence was that there was a culvert at the west side of Ohio avenue. If so, the culvert must have been over the gutter running along the west side of Ohio avenue, and the evidence was that the scarifier was not run closer to the culvert than 18 inches. If that testimony be true, and for the purpose of the demurrer to the evidence it must be taken as true, then the pipe line could not have been in the gutter. The dirt could not have been removed from the gutter at that place by heavy machinery because it was covered by the culvert.

Judgment affirmed as to all defendants except Civic Gas Company. As to defendant Civic Gas Company, the judgment is reversed and the cause is remanded, with directions to grant plaintiff a new trial.

HURST, C.J., DAVISON, V.C.J., and BAYLESS and CORN, JJ., concur. WELCH, J., concurs in conclusion. GIBSON and ARNOLD, JJ., dissent.