Dear Representatives Hefner
¶ 0 This office has received your recent request for an official Opinion asking, in effect, the following questions:
 1. Are the residents of an Oklahoma municipality prohibited from using propane in lieu of natural gas for their individual energy needs when the municipality owns and operates a natural gas distribution system for the benefit of its residents, and when the municipality purchases all gas used in the system from a natural gas public utility pursuant to a wholesale rate schedule, approved by the Oklahoma Corporation Commission, the relevant terms of which provide:
 Wholesale natural gas service is available under this rate schedule to gas utility companies or systems which purchase their entire gas requirements from Company for resale and distribution to their customers. . . . Gas service is not available under this rate schedule for standby, supplemental, or emergency service, or for resale to other utilities for resale[?]
 2. May a municipality, which owns and operates a natural gas distribution system to serve its residents, lawfully enact an ordinance mandating that its residents use the municipality's gas distribution system, and effectively prohibit residents from using propane?
 I.
¶ 1 In general, the Oklahoma Corporation Commission ("OCC") is charged with the duty of regulating public utilities (defined in17 O.S. 151 (1991) to encompass natural gas pipelines serving the public), including fixing and establishing rates, and implementing the rules and requirements therefor. 17 O.S.152(A) (1996). The OCC's rules are codified in the Oklahoma Administrative Code ("OAC"). A natural gas utility is authorized to provide natural gas service only in accordance with OCC filed and approved rate schedules. OAC 165:45-15-2(a). A rate schedule is defined as "a schedule of rates, charges, and conditions fora specific classification of customer or for other specific service(s)." OAC 165:70-1-2 (emphasis added). The OCC, however, has no jurisdiction over "cities, towns, or other bodies politic, that now or hereafter may own, operate, or manage any plant or equipment" for the conveyance of gas by pipeline "for public use." 17 O.S. 151 (1991).
¶ 2 For these reasons, language in a natural gas rate schedule stating that service is available for a customer's "entire gas requirements" prohibits only that customer from augmenting
its gas requirements with alternative sources.[1] It does not preclude that customer from totally bypassing the utility's service and obtaining its entire gas requirements from an alternative source.[2]
¶ 3 Therefore, with regard to your first question, the rate schedule in question is applicable only to the utility's wholesale customers, which in this case is the municipality not its residents, and even then prohibits only, inter alia,
supplemental service. Furthermore, an Oklahoma Corporation Commission approved rate schedule and the terms therein cannot govern the operations of, and services provided by, a municipally owned and operated utility system. Such a rate schedule, therefore, does not prevent a resident of the municipality from consuming propane gas in lieu of taking natural gas service from the municipality.
 II.
A. Authority of Municipalities in General
¶ 4 With regard to your second question, Oklahoma municipalities generally exercise two types of authority: (1) legislative, public, or governmental powers, in the exercise of which they are sovereign and govern their residents; and (2) proprietary, corporate, or quasi-private powers conferred not for the purpose of governing their residents, but for the private advantage of the municipality's residents and for the municipality itself as a legal entity. City of Tulsa v.Roberts, 107 P.2d 1006, 1007 (Okla. 1940). Owning and operating a municipal natural gas utility is an exercise of the municipality's proprietary authority, whereas enacting ordinances is an exercise of legislative authority. See, e.g., Heisler v.Thomas, 651 P.2d 1330, 1331 (Okla. 1982); Sharp v. Hall,181 P.2d 972, 974 (Okla. 1947); City of McAlester v. State ex rel.Board of Public Affairs, 154 P.2d 579, 580 (Okla. 1945).
¶ 5 Oklahoma municipalities are clearly authorized to own and operate natural gas utilities. 11 O.S. 22-104(1) 11 O.S.22-104(2); see also Okla. Const. Article XVIII, Section 6. The more difficult question posed by your opinion request is whether a municipality, having determined to build and operate a natural gas utility in exercise of its proprietary authority, can use its legislative authority to require residents to take gas service from the utility and prohibit them from using a competing fuel such as propane to meet their energy needs.
B. Construction of Municipal Authority
¶ 6 Oklahoma municipalities have no inherent power and authority, but possess, and can exercise, only those powers expressly granted by the Legislature or which are necessarily or fairly implied, or incidental to expressly granted powers. Cityof Hartshorne v. Marathon Oil Company, 593 P.2d 97, 99 (Okla. 1979); Shipp v. Southeastern Oklahoma Industries Authority,498 P.2d 1395, 1398 (Okla. 1972). Further, statutes granting powers to municipalities are strictly construed, and any reasonable doubt as to the existence of particular powers must be resolved against the municipality. City of Tulsa v. Southwestern BellTelephone Co., 75 F.2d 343, 352 (10th Cir. 1935), cert.denied, 295 U.S. 744 (Okla. 1935); see also Ex parte Stewart,18 P.2d 1054, 1055 (Okla. 1933); Ex parte Holmes, 18 P.2d 1053,1054 (Okla. 1933); Grantham v. City of Chickasha, 9 P.2d 747,750 (Okla. 1932); In re Lankford, 178 P. 673, 673-74 (Okla. 1919).
¶ 7 Oklahoma statutes expressly authorize municipalities to "enact ordinances, rules and regulations not inconsistent with the Constitution and laws of Oklahoma for any purpose mentioned in Title 11 of the Oklahoma Statutes or for carrying out their municipal functions." 11 O.S. 14-101 (1991). The powers of Oklahoma municipalities are set forth in Article 22, Title 11 of the Oklahoma Statutes.
¶ 8 There is no express authorization in Title 11 for an Oklahoma municipality to either prohibit the consumption of propane gas or mandate the use of the municipal gas utility within the corporate limits. Therefore, any such authorization must be necessarily or fairly implied, or incidental to the powers expressly granted by Title 11. City of Hartshorne,593 P.2d at 99. However, statutes granting powers to municipalities are strictly construed, and any reasonable doubt as to the existence of powers must be resolved against the municipality.City of Tulsa, 75 F.2d at 352.
1. General Corporate Powers
¶ 9 Oklahoma municipalities are expressly authorized to exercise general corporate powers, including the powers to:
1. Sue and be sued;
 2. Purchase and hold real and personal property for the use of the municipality;
 3. Sell and convey any real or personal property owned by the municipality and make orders respecting the same as may be conducive to the best interests of the municipality;
 4. Make all contracts and do all other acts in relation to the property and affairs of the municipality, necessary to the good government of the municipality, and to the exercise of its corporate and administrative powers; and
 5. Exercise such other powers as are or may be conferred by law.
11 O.S. 22-101 (1991).
¶ 10 Strictly construing these provisions and resolving all doubts against the municipality, the authority to mandate use of the municipal gas utility system or to prohibit the use of an alternative energy source such as propane, cannot be necessarily or fairly implied, nor can such authority be considered incidental to expressly granted powers. Neither mandating use of the municipal utility nor prohibiting the use of propane can fairly be said to be "necessary to the good government of the municipality, and to the exercise of its corporate and administrative powers." Id. (emphasis added). While such actions might be useful or helpful to a municipality, they are not indispensable. Therefore, a municipality is not authorized to take such actions under its general corporate powers.
2. Express Business Powers
¶ 11 In addition to their general corporate powers, however, Oklahoma municipalities are granted certain other powers in order to engage in businesses such as the operation of a natural gas utility. Under 11 O.S. 22-104 (1991), municipalities are expressly authorized to:
 1. Acquire real estate sites and rights-of-way for gas plants and pipelines;
 2. Exercise the right of eminent domain to acquire such sites or rights-of-way;
 3. Issue and sell bonds to finance utility operations; and
4. Sell utility commodities and services.
¶ 12 Municipalities are also authorized to "do all things necessary and proper" in the operation of their utility businesses. Id. 11 O.S. 22-104(1) 11 O.S. 22-104(6).
¶ 13 Again, strictly construing these provisions and resolving all doubts against a municipality, the authority to mandate use of a municipal gas utility system or to prohibit the use of an alternative energy source cannot be necessarily or fairly implied, nor can such authority be considered incidental to expressly granted powers. Neither mandating use of the municipal utility nor prohibiting the use of propane can be fairly said to be "necessary and proper" to the operation of a utility business. Id. (emphasis added).
C. Prohibition Against Exclusive Franchises
¶ 14 "[A] municipality operating a utility is governed by the same restrictions as private utility corporations, in practices of discrimination in rates and service." Oklahoma City Hotel Motor Hotel Ass'n v. Oklahoma City, 531 P.2d 316, 319 (Okla. 1974). There is no statutory authority for non-municipal Oklahoma gas utilities to receive exclusive territories for the sale of gas. Moreover, non-municipal Oklahoma gas utilities have no authority to prohibit the use of propane. It follows, then, that municipal gas utilities have no legal authority, under their proprietary powers, to mandate the taking of their services or to prohibit the provision of competing energy sources such as propane.
¶ 15 Further, it is clear that under Oklahoma law municipalities cannot grant exclusive franchises for the provision of utility service. Okla. Const. Article XVIII, Section7. Thus, a municipality owning and operating a natural gas utility cannot prohibit a competing gas utility from being built, nor can the municipality by ordinance prohibit its gas utility customers from switching to the competing energy supplier. To do either would be to create an exclusive franchise for the municipality in violation of Oklahoma law. City of Tulsa v.Thomas, 214 P. 1070, 1073 (Okla. 1923) (ordinance granting city officials unfettered discretion to decide whether to allow competing private bus service held void as an exclusive franchise); see also Territory ex rel. Oklahoma Gas ElectricCo. v. De Wolfe, 74 P. 98, 99-102 (Okla. 1903) (franchised private gas utility not entitled to enjoin competing franchised gas utility because Oklahoma cities have no authority to issue an exclusive franchise).
¶ 16 While the provision of propane is not strictly a "public utility" service, see 17 O.S. 151 (1991), it is analogous to a competing natural gas utility and the same reasoning should apply. That is, if a municipality cannot insulate its natural gas utility from a competing natural gas utility, neither should it be allowed to insulate its gas utility from another competing energy source — propane.
D. Limitations on Police Power
¶ 17 The police power of a municipality extends only to measures to promote the public health, comfort, safety or welfare. Utility Supply Company v. City of Broken Arrow,539 P.2d 740, 743 (Okla. 1975). A municipality may not, under the guise of protecting the public, interfere with private business, prohibit lawful occupations, or impose unreasonable or unnecessary restrictions upon private businesses. City ofGuthrie v. Pike Long, 243 P.2d 697 (Okla. 1952).
¶ 18 City of Guthrie involved a municipal ordinance to regulate the sale of distress merchandise or merchandise damaged by fire, smoke, water, etc., purportedly for the protection of the public. However, the apparent aim and ultimate effect of the ordinance was to prohibit just such a business which had been operating in the city for several years. In its opinion the Oklahoma Supreme Court stated:
 It is an almost universal rule that the standard by which the validity of all exercise of the police power is tested is that it extends only to such measures as are reasonable, and that all such regulations must be reasonable under all the circumstances.
City of Guthrie, 243 P.2d at 700.
¶ 19 After reviewing the evidentiary record before it, the Court stated:
 In the instant case there is no showing in the record nor do the facts brought out in the testimony of the parties, tend to indicate that the public welfare is to any extent whatever injuriously affected by the business conducted by plaintiffs, or that the public interest will be subserved by the enforcement of the questioned ordinance. From the record . . . the only persons complaining are the competitors of plaintiffs . . . but there is no evidence which in the slightest degree tends to prove that the continued operation of the business of plaintiffs will force these other merchants out of business. . . .
. . . .
 In the instant case, so far as the record shows, plaintiffs are engaged in the operation of a lawful business, which they are conducting in a lawful and proper manner and in such [a] way that the public instead of being harmed is benefited thereby. . . . We think the record conclusively establishes that the ordinance was passed solely for the purpose of forcing plaintiffs to close their place of business, by placing upon them restrictions with which they could not possibly comply, and by saddling them with large and unnecessary license payments, and that all this was done solely for the benefit of their competitors. The trial court properly held that the ordinance was violative of the constitutional rights of plaintiffs, and was arbitrary and discriminatory. . . .
City of Guthrie, 243 P.2d at 701 (emphasis added).
¶ 20 The distribution of propane, like the retail establishment in City of Guthrie, is a legitimate business in Oklahoma. It is clear that the State has reserved to itself the authority to regulate the propane business in Oklahoma and has delegated none of that authority to municipalities. See 52 O.S. 420.1 — 52O.S. 420.17 (1991-1996). Therefore, any municipal ordinance effectively prohibiting the distribution of propane is not a legitimate exercise of municipal police powers and must be deemed to be an unreasonable and unlawful restraint on the conduct of a legitimate business.
¶ 21 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. The residents of an Oklahoma municipality are not prohibited from using propane in lieu of natural gas to meet their energy needs when the municipality owns and operates a natural gas distribution system for the benefit of its residents, and when the municipality purchases all gas used in the system from a natural gas public utility pursuant to a wholesale rate schedule, approved by the Oklahoma Corporation Commission, the relevant terms of which provide:
 Wholesale natural gas service is available under this rate schedule to gas utility companies or systems which purchase their entire gas requirements from Company for resale and distribution to their customers. . . . Gas service is not available under this rate schedule for standby, supplemental, or emergency service, or for resale to other utilities for resale.
 2. Under 11 O.S. 14-101 and 11 O.S. 22-101, an Oklahoma municipality which owns and operates a natural gas distribution system to serve its residents cannot lawfully enact an ordinance mandating that residents use the municipality's gas distribution system, and effectively prohibit residents from using propane.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
MICKEY S. MOON ASSISTANT ATTORNEY GENERAL
RICK D. CHAMBERLAIN ASSISTANT ATTORNEY GENERAL
[1] Such augmented service would constitute the supplemental service referred to in the rate schedule. See, e.g., Florida'sPower Light Company v. FERC, 85 F.3d 684, 686 (D.C. Cir. 1996). This exclusive dealing requirement might itself implicate antitrust concerns, but since your question does not ask if such a provision violates antitrust law, this opinion does not address that issue.
[2] "The construction of [rate schedules] does not substantially differ in character from that of any other document drawn in controversy." Burrus Mill Elevator Co. of Oklahoma v.Chicago, Rock Island Pac. R.R. Co., 131 F.2d 532, 534 (10th Cir. 1942). A rate schedule has the force of law and may not be contracted away, see, e.g., Colorado Southern Railway Companyv. Southwestern Roofing Sheet Metal Company, 374 F. Supp. 24,26 (W.D. Okla. 1974), but rather, becomes part of the contract, if one exists, between the parties. See, e.g., Furrow Co. v.American Airlines, 102 F. Supp. 808, 809 (W.D. Okla. 1952). Under the rules of both statutory or contract construction, words "are to be understood in their ordinary sense, except when contrary intention plainly appears." 25 O.S. 1991, 1 (statutory construction); see also 15 O.S. 154 (1991) (interpretation of contracts).